Richard Cordray, Attorney General, and M. Scott Criss, Assistant Attorney General, for appellee.

DISCIPLINARY COUNSEL *v.* MCSHANE.

[Cite as *Disciplinary Counsel v. McShane,*
121 Ohio St.3d 169, 2009-Ohio-746.]

(No. 2007–1918—Submitted December 17, 2009—Decided February 25, 2009.)

**Per Curiam.**

{¶ 1} Respondent, Eugene F. McShane of Columbus, Ohio, Attorney Registration No. 0017578, was admitted to the practice of law in Ohio in 1971. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for two years, with the entire suspension stayed on remedial conditions, based on findings that he failed to provide promised legal services to two clients, return unearned portions of the clients' fees, and respond during an investigation of this misconduct. We agree that respondent violated the Disciplinary Rules of the Code of Professional Responsibility as found by the board and that the recommended sanction is appropriate.

### Procedural History

{¶ 2} Relator charged respondent on April 16, 2007, with three counts of professional misconduct. Respondent did not answer the complaint, and relator moved for default. See Gov.Bar R. V(6)(F). A master commissioner appointed by the board granted the motion. Finding multiple violations of the Disciplinary Rules and Gov.Bar R. V(4)(G), which requires lawyers to assist in investigations of misconduct, the master commissioner recommended respondent's indefinite suspension from practice. The board adopted the master commissioner's findings of misconduct and recommended sanction.

{¶ 3} We ordered respondent to show cause why we should not confirm the board's recommendation. In response, respondent filed a motion for remand to the board, objections to the board's report, a motion to supplement the record, and a second motion for remand. On March 21, 2008, we denied the motion to supplement but granted the motion to remand. Because respondent proffered compelling evidence of a mental disability in explanation for his failure to answer as well as substantial evidence in mitigation of his misconduct, we returned the case to the board for further proceedings as to the appropriate sanction.

{¶ 4} On remand, the parties stipulated to the master commissioner's findings of misconduct, and a panel of the board heard respondent's mitigation evidence. Finding violations of the Disciplinary Rules and Gov.Bar R. V(4)(G) and weighing the other evidence, the panel recommended a two-year suspension from practice, all stayed. The board adopted the panel's findings and recommendation.

## Misconduct

### Count I—The Roholt Grievance

{¶ 5} Philip C. Roholt retained respondent in September 2004 to pursue an antitrust claim on his behalf. Pursuant to their agreement, Roholt paid respondent an initial fee of $5,000 for his services. Respondent thereafter failed to maintain contact with Roholt, did no work on his case, and did not return any of the $5,000 fee as unearned.

{¶ 6} We find the evidence to be clear and convincing that respondent's acts and omissions in the Roholt case violated DR 1–102(A)(5) (prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice), 1–102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 7–101(A)(1) (prohibiting a lawyer from intentionally failing to seek a client's lawful objectives), 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of professional employment), and 7–101(A)(3) (prohibiting a lawyer from intentionally causing a client prejudice or damage). Because respondent stipulated to a violation of Gov.Bar R. V(4)(G) relative to this count, we also find that misconduct.

### Count II—The Holowitz Grievance

{¶ 7} In November 2005, Thomas G. Holowitz asked the Columbus Bar Association ("CBA") to arbitrate his fee dispute with respondent. Respondent did not participate in the arbitration, and in October 2006, a fee-arbitration committee determined that respondent had improperly withheld $1,350 in fees from Holowitz. The committee directed respondent to return the money, but no evidence suggests that he ever did.

{¶ 8} We find the evidence to be clear and convincing that respondent's failure to repay Holowitz violated DR 1–102(A)(6) and 9–102(B)(4) (requiring a lawyer to promptly pay or deliver funds in the lawyer's possession to which the client is entitled).

### Count III—Failure to Respond to an Investigation of Misconduct

{¶ 9} In November 2006, CBA inquired several times about issues raised during the arbitration proceeding, including whether respondent had deposited into his client trust account a $500 refund that had been returned by a court. Respondent did not reply, and in January 2007, CBA asked relator to investigate. Relator sent respondent a certified letter of inquiry that month; however, respondent also did not reply to that letter.

{¶ 10} We find the evidence to be clear and convincing that respondent's failure to reply to the letter of inquiry violated DR 1–102(A)(5) and 1–102(A)(6) and Gov.Bar R. V(4)(G).

## Sanction

{¶ 11} In recommending the two-year stayed suspension from practice as the appropriate sanction, the panel and board weighed the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The panel and board found that the aggravating factors of lack of cooperation in the disciplinary process and failure to make restitution, which the master commissioner had previously found, had been offset by respondent's new mitigation evidence. Neither of the parties dispute the existence or weight of the cited mitigating factors, and we accept the panel and board findings in that regard.

{¶ 12} Respondent practiced law for over 35 years without disciplinary incident before the current grievances and always enjoyed a reputation for good character and professional competence. See BCGD Proc.Reg. 10(B)(2)(a) and (e). Respondent has, since our remand, made restitution with interest to his clients and cooperated completely in the proceedings. See BCGD Proc.Reg. 10(B)(2)(c) and (d). Moreover, respondent did not fail his clients because of dishonesty or self-interest. See BCGD Proc.Reg. 10(B)(2)(b). Rather, respondent established the mitigating effect of his mental disability under BCGD Proc.Reg. 10(B)(2)(g), which requires proof of (i) a diagnosis of mental disability by a qualified health-care professional, (ii) a determination that mental disability contributed to cause the misconduct, (iii) a sustained period of successful treatment, and (iv) a prognosis from a qualified health-care professional that the attorney will be able to return to competent, ethical professional practice under specified conditions.

{¶ 13} As to his professional reputation, respondent's distinguished career has included ten years in the Ohio Attorney General's Office, serving as chief of both the Special Litigation and the Antitrust Sections, where he won high-profile cases and recovered millions for the state of Ohio. Over the years, respondent developed many professional relationships with now prominent attorneys who strongly support him and his ability to continue in the practice of law. Many of these attorneys, including some with whom he later practiced law for as long as 20 years, testified or wrote letters extolling respondent's integrity, legal skills, and professional achievements.

{¶ 14} Respondent ended up practicing as a sole practitioner from 2001 until May 2005, when he took a job with his present employer, Safe Auto Insurance Company ("Safe Auto"). Respondent did not enjoy solo practice and eventually completed work in or referred all but the Roholt and Holowitz case files in

anticipation of closing the practice. Respondent identifies 2001 as the beginning of his depression.

{¶ 15} In early March 2008, respondent entered into a five-year Ohio Lawyers Assistance Program ("OLAP") contract and has since completed a physical examination, substance-abuse assessment, and a mental-health examination. He is in compliance with his contract, currently in treatment with psychologist John A. Tarpey, Ph.D., and taking antidepressant medication.

{¶ 16} Thomas Paulucci, J.D., Ph.D., a forensic psychologist, initially assessed respondent's condition in January and March 2008. Dr. Paulucci diagnosed respondent with dysthymia, a condition characterized by depression on a daily basis for at least six months. He reported that respondent suffered from major depression, including suicidal tendencies, diminished cognitive function, and a "paralysis of will." Dr. Paulucci concluded that respondent's major depression, low energy levels, and profound feelings of hopelessness and helplessness had rendered him unable to act in the Roholt and Holowitz cases.

{¶ 17} Dr. Paulucci reevaluated respondent in mid-July 2008. He testified to respondent's improved ability to focus and concentrate, but was somewhat guarded in his prognosis for respondent's long-term recovery, as respondent was still in the early stages of treatment. Dr. Paulucci anticipated that the resolution of the current proceedings would alleviate much of respondent's debilitating stress and have a positive effect on his outlook. In Dr. Paulucci's opinion, respondent could practice law within ethical constraints for the foreseeable future, but only in a structured association with other lawyers and only as long as he continued his medication and therapy.

{¶ 18} Brad Lander, Ph.D., LICDC, who examined respondent in June 2007, made findings consistent with Dr. Paulucci's conclusions. He reported that respondent suffered from major depressive disorder, recurrent, in partial remission. Dr. Lander also agreed that respondent was responding to treatment for depression.

{¶ 19} Respondent's immediate supervisor at Safe Auto testified on his behalf as well. Kelly Phillips, also a lawyer, is in charge of the Special Investigations Unit, which is the litigation section of the Specialty Claims Unit that investigates severe-injury claims and fraudulent claims. Phillips praised respondent's performance highly, describing him as an excellent lawyer with a passion for the law, trustworthy, and utterly reliable. Phillips said that the company might reorganize the department to include legal counsel, a position for which he would recommend respondent if respondent remains able to practice. Phillips added that the disciplinary proceedings, whatever the outcome, did not pose any threat to respondent's current employment, which does not require a law license.

{¶ 20} Finally, respondent has shown much remorse, apologizing for his failures to his clients and the legal profession. Respondent has paid Holowitz and Roholt restitution with interest, though he had to ask friends for the money. Respondent's financial situation is so dire that he is in the process of trying to prevent foreclosure of his home.

{¶ 21} In view of the mitigating evidence, relator no longer advocates an indefinite suspension, and neither party has filed objections to the recommended two-year stayed suspension. As conditions for the stay, the panel and board agreed on the following: that respondent (1) continue treatment with his psychologist and treating physician until released, (2) provide quarterly reports to relator from his mental-health professional or treating physician, (3) comply with his OLAP contract in all respects, and (4) practice only in association with other lawyers and under the auspices of a monitoring attorney to be appointed by relator. We accept the panel and board recommendation.

{¶ 22} We suspend respondent from the practice of law in the state of Ohio for a period of two years. In accordance with Gov.Bar R. V(9), the two-year suspension is stayed on the probationary conditions cited by the panel and board. If respondent violates the terms of the stay and probation, the stay will be lifted and respondent will serve the entire two-year suspension.

{¶ 23} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

The Anelli Law Firm and Dianna M. Anelli, for respondent.