**BUTLER COUNTY BAR ASSOCIATION ET AL. *v*. PORTMAN**.

**[Cite as *Butler Cty. Bar Assn. v. Portman*,**

**121 Ohio St.3d 518, 2009-Ohio-1705.]**

*Attorneys at law — Misconduct — Breaches of duties to clients and the profession — Mental disability in mitigation — Indefinite suspension with credit for an interim suspension.*

(No. 2007-1570 — Submitted January 13, 2009 — Decided April 16, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 06-058.

_____

**Per Curiam**.

{¶ 1} Respondent, Clifford Scott Portman of Cincinnati, Ohio, Attorney Registration No. 0073390, was admitted to the Ohio bar in 2001.

{¶ 2} The Board of Commissioners on Grievances and Discipline has recommended that we indefinitely suspend respondent's license to practice, based on findings that he failed to refund unearned legal fees, applied for court-appointed-counsel fees for services for which he had already been paid, allowed his professional malpractice insurance to lapse without the required disclosures to clients, and failed to appropriately participate during the investigation of this misconduct. The board's recommendation is before us pursuant to our order of December 21, 2007, in which we suspended respondent from practice on an interim basis and remanded the case to the board for review of evidence respondent had proffered in mitigation of his established misconduct. See *Butler Cty. Bar Assn. v. Portman*, 116 Ohio St.3d 1450, 2007-Ohio-6842, 878 N.E.2d 28.

**{¶ 3}** In recommending an indefinite suspension, the board accepted as mitigating respondent's efforts to rectify the consequences of his misconduct and the causal connection between his mental disability and his ethical breaches. But the board also rejected respondent's request that he receive credit for the interim suspension of his license as an offset to the two-year bar for filing a petition for reinstatement that follows an indefinite suspension. We accept the board's findings of misconduct and recommendation for an indefinite suspension; however, on respondent's objections, we grant him credit for his December 21, 2007 interim suspension.

### Procedural History

**{¶ 4}** Relator Disciplinary Counsel commenced this action in June 2006 by filing a two-count complaint charging respondent with various violations of the Disciplinary Rules of the Code of Professional Responsibility and Gov.Bar R. V(4)(G) (requiring lawyers to cooperate in disciplinary investigations). In December 2006, Disciplinary Counsel and relator Butler County Bar Association amended the complaint, alleging four additional counts of misconduct. Respondent did not answer, and relators moved for default. See Gov.Bar R. V(6)(F). A master commissioner appointed by the board granted the motion, making findings of misconduct as to all six counts and recommending respondent's permanent disbarment. The board adopted the master commissioner's findings and recommendation.

**{¶ 5}** After the board filed its report in this court for review, respondent moved to supplement the record. We granted the motion, returning the case for the board's consideration of mitigation evidence, including respondent's claimed mental disability and restitution. Our order also suspended respondent from practice on an interim basis.

**{¶ 6}** Respondent does not dispute that he committed the misconduct found against him, and on remand, a panel of the board heard evidence presented

in mitigation. Finding violations of the Disciplinary Rules and weighing the aggravating and mitigating factors, the panel recommended respondent's indefinite suspension from practice and that he receive no credit for his interim suspension. The board again adopted the panel's findings and recommendation.

### Misconduct

*Count I — The Blech Grievance*

{¶ 7} Respondent violated DR 1-102(A)(6) (a lawyer shall not engage in conduct adversely reflecting on his fitness to practice law), 6-101(A)(3) (a lawyer shall not neglect an entrusted legal matter), and 9-102(B)(4) (a lawyer shall promptly pay or deliver requested funds, securities, or other properties that the client is entitled to receive) in representing Keith Blech.

{¶ 8} Blech's wife, from whom he later separated, was involved in an automobile accident with an uninsured or underinsured driver in January 2004. While representing Blech in another case, respondent advised him that if his wife recovered in the lawsuit she had filed, Blech was legally entitled to a portion of the damage award. Respondent then agreed to help Blech collect his share of any damages and asked for a $500 fee to begin.

{¶ 9} Blech sent respondent a $500 money order in early July 2005, after respondent had demanded payment at least four more times. After receiving payment, respondent failed to return Blech's numerous telephone calls and did no work on the case. Despite Blech's requests, respondent also failed to refund any unearned legal fees.

*Count II — Failure to Cooperate in the Investigation of the Blech Grievance*

{¶ 10} In late 2005, Disciplinary Counsel sent respondent certified letters of inquiry to his business and home addresses listed on the records of his attorney registration seeking responses by specified dates. The first letter was returned as undeliverable; the second was returned as unclaimed. The return receipt for a

third certified letter of inquiry sent to an updated address was signed, but respondent still did not reply.

{¶ 11} In January 2006, a "Dwight J. Portman" signed for a fourth certified letter, but this inquiry also produced no response. Disciplinary Counsel sent a fifth inquiry letter the next month, again to both the home and business addresses at which respondent was registered. Each of the certified receipts was signed, but respondent did not answer either letter. Respondent also failed to appear in response to a subpoena for his deposition that was delivered in person to the registered residence address.

{¶ 12} By failing to appropriately respond during relator's investigation, respondent violated Gov.Bar R. V(4)(G).

*Count III — The Cook Grievance*

{¶ 13} Respondent violated DR 1-102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(6), 6-101(A)(3), and 9-102(B)(4) and Gov. Bar R. V(4)(G) in his attorney-client relationship with Edith and Charles Cook.

{¶ 14} The Cooks hired respondent in February 2005 to file a motion for judicial release for their son, who was serving a six-year, nine-month prison term. They paid respondent $500, which he promised to return if he could not procure their son's release. Though another attorney had already advised the Cooks that their son was not eligible for judicial release until he had served five years of his sentence, the Cooks hired respondent because he intimated that this rule might not apply.

{¶ 15} Respondent did not file a motion for judicial release as promised and did no other work for the Cooks. The Cooks made numerous requests for the return of their $500. For over one year, they called respondent, sent him certified letters, and repeatedly went to his office, to no avail. When respondent did not honor any of their requests, the Cooks filed a grievance with relator.

**{¶ 16}** On March 16, 2008, respondent appeared at a transcribed proceeding to answer the Butler County Bar Association's questions about the Cook grievance. He represented that he had already refunded the Cooks' money, a statement that they fervently denied. Respondent also promised to produce various records of his practice, including 15 months of bank statements, by the end of that March. He failed to do so.

*Count IV — The Mullins Grievance*

**{¶ 17}** Respondent violated DR 1-102(A)(4), l-102(A)(6), 6-101(A)(3), and 9-102(B)(4) in his attorney-client relationship with Beverly House and her son, Ronald Mullins.

**{¶ 18}** House had much the same experience with respondent as the Cooks did. She paid respondent $250 in October 2005 to file a motion for judicial release for Mullins, who was serving a one-year sentence of incarceration. Over the succeeding several months, respondent stopped communicating, refusing to return House's many telephone calls. In late 2005, a member of the Butler County Prosecutor's Office arranged a three-way telephone call with House and respondent. Respondent falsely told the other participants in the call that he had already filed the motion for judicial release.

**{¶ 19}** During the proceedings on March 16, 2006, respondent admitted under oath his failure to file the motion for judicial release. He also admitted his failures to communicate with his client and to repay her unearned fees.

*Count V — The Johnson Grievance*

**{¶ 20}** Respondent violated DR l-102(A)(4), l-102(A)(6), and 6-l0l(A)(3) in his attorney-client relationship with Douglas Johnson.

**{¶ 21}** In February 2005, Johnson paid respondent $550 to defend him against a felony charge. Johnson pleaded guilty to having a weapon while under a disability and was sentenced to 4 1/2 years in prison. Johnson's mother afterward paid respondent another $450, for a total of $1,000, for his defense of her son.

She apparently also paid respondent to file either an appeal or a motion for judicial release, which he never did.

**{¶ 22}** Respondent accepted payments from Johnson and his mother, even though the Butler County Common Pleas Court had appointed him to serve as Johnson's counsel. In March 2005, respondent applied to the court for appointed-counsel fees. Respondent denied on the application that he had already received compensation for his services. The Butler County Auditor paid respondent an additional $1,065 because of the misrepresentation.

*Count VI — Malpractice Insurance*

**{¶ 23}** During the proceedings on March 16, 2006, respondent admitted that after allowing his professional liability insurance policy to lapse, he continued to represent clients without providing disclosures or obtaining signed waivers as required. He thereby violated DR l-l02(A)(6) and 1-104 (requiring an attorney who does not maintain professional liability insurance with specified limits to disclose and obtain clients' consent to the deficiency in writing).

**Sanction**

**{¶ 24}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated by the lawyer in question and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

**{¶ 25}** We have already discussed respondent's breaches of duties owed to his clients, DR l-l02(A)(4), 6-10l(A)(3), and 9-102(B)(4), and to the legal profession and public, DR 1-102(A)(6) and Gov.Bar R. V(4)(G). As for similar cases, the panel and board relied on precedent in which we have indefinitely suspended lawyers from practice for acts and omissions that, absent compelling evidence of a mental disability causally related to the underlying misconduct, would have warranted a lawyer's permanent disbarment. See, e.g., *Erie-Huron Counties Joint Certified Grievance Commt. v. Meyerhoefer*, 99 Ohio St.3d 62, 2003-Ohio-2467, 788 N.E.2d 1073 (attorney with qualifying mental disability suspended indefinitely for transferring $21,000 from a client and the client's decedent's estate to himself without authorization, failing without cause to distribute assets of a trust for 16 months despite beneficiary requests, and failing without cause to file a client's income tax returns). Id. at ¶ 11. Respondent's neglect of clients, failure to return unearned fees, various misstatements, and failure to cooperate in the disciplinary process do not rise to the level of misconduct in *Meyerhoefer;* nevertheless, we agree, as do the parties, that an indefinite suspension is appropriate here.

**{¶ 26}** In recommending an indefinite suspension, the panel and board weighed relevant aggravating and mitigating factors. Weighing against respondent are his dishonest motive and the fact that he (1) engaged in a pattern of multiple disciplinary infractions, (2) failed to appropriately cooperate in the disciplinary process, and (3) made a false statement during the process about whether he had refunded the Cooks' money. See BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), and (f). Factors weighing in respondent's favor, mainly because of the supplemental mitigation evidence, include that (1) he has no prior disciplinary record, (2) he has paid restitution to all the named clients and repaid the court-appointment fees to Butler County, acknowledging the wrongful nature of his

conduct, and (3) he has fully cooperated in the disciplinary process since our remand. See BCGD Proc.Reg. 10(B)(2)(a) and (d).

{¶ 27} Respondent, who began experiencing depression during law school, suffers from a qualifying mental disability. To have significant mitigating effect, a lawyer asserting mental disability must provide (1) proof of a reliable diagnosis, (2) proof that the disability contributed to cause the misconduct, (3) evidence of the lawyer's sustained period of successful treatment for the disability, and (4) a reliable prognosis that the lawyer will be able to return to ethical professional practice under specified conditions, if any. See BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv). Respondent's record meets these criteria.

{¶ 28} Will Caradine, Ph.D., a clinical psychologist, performed a mental-health examination on respondent and testified as to his findings. Caradine began treating respondent on a weekly basis in December 2007, diagnosing him with "generalized anxiety disorder with depressive features." Caradine reported that respondent's psychological profile during the events at issue was characterized by strong anxiety and elements of depression. He described respondent's anxiety as overwhelming to the point that it interfered with his daily functioning and professional responsibilities. Caradine expressed his opinion that, to a reasonable degree of medical certainty, respondent's ethical breaches resulted from these impairments, rather than from any intent to defraud or deceive.

{¶ 29} Caradine also reported that respondent was fully invested in the psychotherapy process and had demonstrated himself to be a conscientious person not ordinarily susceptible to ethical shortfalls. He described his therapeutic approach for delving into and resolving issues repressed in respondent's psyche since childhood. Caradine reported progress, testifying that respondent continues to incorporate the insights gained from therapy and will be able to resume the competent and ethical practice of law. He conditioned his prognosis, however, on

respondent's remaining in therapy indefinitely and continuing with prescribed antidepressant medications.

{¶ 30} In addition, Stephanie Krznarich, clinical director of the Ohio Lawyers Assistance Program ("OLAP"), testified to respondent's participation, including his commitment to a four-year recovery contract with OLAP. Among the conditions specified by the contract are respondent's continued compliance with the regimen prescribed by his doctors, acceptance of OLAP's oversight in identified practice problem areas, and regular check-ins with OLAP personnel. Occupational counseling is also recommended. Krznarich reported that respondent was in full compliance with this contract and that she had no misgivings, assuming his compliance continues, about whether after a two-year suspension he will be fit to petition for reinstatement to practice.

{¶ 31} As the panel and board aptly observed:

{¶ 32} "While Respondent's conduct in neglecting his clients and initially failing to make restitution is egregious, Respondent has now accepted responsibility for his actions, has made restitution, and is actively engaged in treatment for his mental disability. We are encouraged by his commitment to continuing his therapy, his OLAP involvement, and taking his medications as prescribed. Most importantly, we note Respondent's confidence that in the future, he would be able to recognize if he were suffering a relapse and would be willing to seek help before causing injury to his clients."

{¶ 33} The panel and board thus modified the earlier recommendation of disbarment to one of an indefinite suspension. Both the panel and board decided against allowing respondent credit for his interim suspension, however, reasoning that the interim suspension resulted from initial indifference to the disciplinary process rather than respondent's mental disability. Objecting to this conclusion, respondent cites his treating psychologist's testimony as evidence that the anxiety

and depressive components of his condition made him powerless to respond and participate as professionally required.

{¶ 34} Neither Disciplinary Counsel nor the Butler County Bar Association has opposed the interim credit respondent seeks, and his doctor's testimony is evidence that respondent was psychologically unable to do more during the investigation and hearing process than appear on the occasion that he did. We credit the expert testimony and attribute respondent's Gov.Bar R. V(4)(G) violations and other procedural improprieties to his mental disability. The objection is sustained.

{¶ 35} Having accepted the findings of misconduct, we also accept the recommended sanction, modified to afford respondent credit for his interim suspension. Respondent is therefore indefinitely suspended from the practice of law in Ohio, effective as of December 21, 2007. In addition to the requirements of Gov.Bar R. V(B) through (E), respondent's reinstatement to the practice of law shall be subject to the following conditions recommended by the panel and board:

{¶ 36} "(1) As conditions for Respondent's return to the practice of law, he must (a) present an opinion to a [reasonable] degree of professional certainty from a qualified health care professional, that he has successfully completed a treatment program, is continuing treatment, and is capable of returning to the competent, ethical, and professional practice of law and (b) provide assessments from his treating psychologist and a qualified occupational counselor regarding any recommended restrictions that should be imposed upon the nature of Respondent's law practice.

{¶ 37} "(2) Upon his return to practice, Respondent must serve probation for three years during which the following conditions must be met: (a) Respondent must continue treatment with a qualified mental health professional, and follow all recommendations of his doctors, including, but not limited to, taking all [medications] as prescribed; (b) Respondent must make regular visits to

his treating mental health professional at a frequency to be determined by the treating professional; (c) Respondent must continue participation in the OLAP program as recommended by his OLAP counselor, and (d) Respondent must refrain from any further misconduct."

{¶ 38} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator Disciplinary Counsel.

Michael T. Gmoser and Richard A. Hyde, for relator Butler County Bar Association.

Bricker & Ecker, L.L.P., and Alvin E. Mathews, for respondent.

_____