DISCIPLINARY COUNSEL *v.* SHAW.

[Cite as *Disciplinary Counsel v. Shaw*, 126 Ohio St.3d 494, 2010-Ohio-4412.]

*Attorney misconduct — Naming the attorney's children as beneficiaries of a trust he prepared for an elderly client and borrowing money from the elderly client without advising the client of the risks of making the unsecured loan and then failing to repay the loan — Two-year suspension with one year stayed on conditions.*

(No. 2010-0316 — Submitted May 26, 2010 — Decided September 23, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-091.

_____

**Per Curiam**.

{¶ 1} Respondent, Kenneth Norman Shaw of Warren, Ohio, Attorney Registration No. 0005525, was admitted to the practice of law in Ohio in 1980. In a four-count amended complaint, relator, Disciplinary Counsel, has charged him with violations of the Code of Professional Responsibility, the Ohio Rules of Professional Conduct, and the Rules for the Government of the Bar in Ohio for conduct occurring both before and after February 1, 2007.[1] A panel of the Board of Commissioners on Grievances and Discipline conducted a hearing on September 29, 2009, but respondent did not appear. The panel, however, reconvened on December 3, 2009, and respondent appeared to present his case, pro se. Based upon findings that respondent named his five children as beneficiaries in a trust he prepared for a client, borrowed $13,000 from the same client without advising her of the inherent conflict of interest and then failed to

_____

1. February 1, 2007, is the effective date of the Rules of Professional Conduct.

repay the loan as agreed, and accepted attorney fees for a guardianship without obtaining prior approval from the probate court, the panel recommended that respondent be suspended from the practice of law for two years with one year stayed on the condition that he pay restitution.

{¶ 2} The board adopted the panel's findings of fact and misconduct, but citing respondent's "serious acts of fraud and misconduct," recommends that we suspend respondent's license to practice law in Ohio for two years, with no stay. Respondent objects, arguing that the recommended sanction is too harsh. He asks us to remand this case to the board for the presentation of additional mitigating evidence. Alternatively, he urges us to impose a one-year suspension with six months stayed on the condition that he remain in compliance with the terms of his contract with the Ohio Lawyers Assistance Program ("OLAP").

{¶ 3} For the reasons that follow, we decline respondent's request to remand this cause to the board but sustain his objection to the board's recommended sanction. We conclude that a two-year suspension with one year stayed upon conditions is the appropriate sanction for his misconduct.

### Misconduct

*Count One*

{¶ 4} Counts One, Two, and Three of the complaint arise from respondent's representation of an elderly client. In September 1999, the client asked him to draft a power of attorney and revocable living trust. Respondent prepared those documents, naming himself as the client's attorney-in-fact, cotrustee, and first successor trustee for the trust. And, purportedly at the client's behest, he included a provision designating each of his five children as a beneficiary of the trust, with each child entitled to receive $5,000 upon the client's death. At the panel hearing, respondent admitted that he had not advised his client, who was unrelated to him by blood or marriage, of the inherent conflict of interest in naming his children as beneficiaries of a document he had prepared.

He also admitted that he had never suggested that she obtain advice from a disinterested person or have another attorney prepare the trust documents.

{¶ 5} The panel and board found, and we agree, that respondent's conduct in preparing a trust document that named his own children as beneficiaries violates DR 1-102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), 1-102(A)(6) (prohibiting conduct that adversely reflects upon the lawyer's fitness to practice law), 5-101(A)(1) (prohibiting, except with consent of a client after full disclosure, a lawyer from accepting employment if the exercise of the lawyer's professional judgment on behalf the client will be or reasonably may be affected by the lawyer's financial and personal interests), and 5-101(A)(2) (prohibiting a lawyer from preparing, drafting, or supervising the preparation or execution of a will, codicil, or inter vivos trust for a client in which the children of the lawyer are named as beneficiaries).

*Count Two*

{¶ 6} In August 2000, respondent requested and obtained a $13,000 loan from his client to be used as a down payment for a building to house his law practice. Pursuant to the terms of the note, respondent was to repay the loan in six months, at six percent interest. He failed to pay the client as agreed. Although he later agreed to make payments of $250 per month, he made only three payments before defaulting. In 2002, the client filed suit and obtained a default judgment against respondent for $13,000 plus interest and court costs. *Blackburn v. Shaw* (Sept. 23, 2003), Warren M.C. No. 2002 CV F 03134.

{¶ 7} At his disciplinary hearing, respondent admitted that he had not advised his client that she should obtain independent advice before making the loan, had not advised her of the risks of making the unsecured loan, and had not discussed the inherent conflict of interest in the loan arrangement. Based upon these facts, the panel and board found, and we agree, that respondent's conduct

with respect to Count Two violates DR 1-102(A)(5), 1-102(A)(6), 5-101(A)(1), and 5-104(A) (prohibiting a lawyer from entering into a business transaction with a client if they have differing interests therein).

{¶ 8} Although the board found that respondent's debt to this client was discharged in bankruptcy, we note that there is no evidence in the record to support respondent's testimony regarding the bankruptcy discharge. On the contrary, the record demonstrates that the administrator of the client's estate filed a concealment-of-assets claim and a declaratory judgment against several parties, including respondent. *Miller v. Lagos* (Feb. 8, 2008), Trumbull C.P. No. 2007 CVA 0045. The probate court found that respondent had "unduly influenced" the client to make the loan, that the loan constituted "self-dealing," and that it was "detrimental" to the trust. Id. at 11. While noting that respondent had alleged that the debt had been discharged in bankruptcy, the probate court concluded that pursuant to Section 523(a)(4), Title 11, U.S.Code, the debt was nondischargeable because it "arose from the debtor's defalcation while acting in a fiduciary capacity." Id. at 6, 10. Consequently, that court ordered respondent to pay $12,250 to the trust. Id. at 12.

{¶ 9} Noting the lack of evidence to demonstrate that the debt had been discharged in bankruptcy, the Eleventh District Court of Appeals affirmed the probate court's judgment against respondent. *Miller v. Lagos*, Trumbull App. No. 2008-T-0014, 2008-Ohio-5863, ¶ 12, 17. Therefore, based upon the probate court's judgment against respondent and the lack of sufficient documentary evidence of the discharge, we reject the board's finding that the debt was discharged in bankruptcy.

*Count Three*

{¶ 10} In Count Three, relator charged respondent with violating Prof.Cond.R. 8.4(h) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate

4

with a disciplinary investigation) based upon his failure to respond to two separate letters of inquiry regarding the allegations in Counts One and Two. While acknowledging respondent's neglect of the two letters, the panel found that he subsequently (1) responded to relator's request for information, (2) appeared for deposition, and (3) fully cooperated with Disciplinary Counsel. Therefore, the panel recommended that the board dismiss Count Three. Although the board did not expressly dismiss this count, we note that it did adopt the panel's findings of fact and conclusions of law and did not make any findings of misconduct with respect to Count Three. Because we accept these findings of fact, we conclude that relator did not prove by clear and convincing evidence that respondent's conduct violated Prof.Cond.R. 8.4(h) or Gov.Bar R. V(4)(G). Accordingly, we dismiss Count Three of relator's amended complaint.

*Count Four*

{¶ 11} The panel and board found that respondent's conduct with respect to Count Four arose out of his representation of two clients who sought guardianship of their grandmother in January 2007. She died in the latter part of May 2007, just days after they had obtained the guardianship. On May 22, 2007, respondent accepted an $800 check for "attorney fees" and a $1,200 check for "legal fees: expenses" from his clients without first obtaining the probate court's approval.[2]

{¶ 12} On October 29, 2007, respondent filed his first application for attorney fees in the probate court, seeking $4,668.75 for legal work, in addition to the $2,000 his clients had already paid. And in December 2008, the probate court found respondent "guilty of concealment of assets" of the estate for receiving the

---

2. Trumbull County Probate Court Local Rule 71.3(A) provides: "Counsel fees shall not be paid by the fiduciary until a written application has been approved by judgment entry."

$800 and $1,200 checks from the guardianship account belonging to the ward.[3] *Smith v. Thornton* (Dec. 8, 2008), Trumbull P.C. No. 2008-CVA-38, at 2. Because the court approved only $800 of respondent's attorney-fee request, it ordered him to reimburse $1,200 to the ward's estate. At the December 2009 disciplinary hearing, respondent admitted that he had not complied with the court's order.

{¶ 13} Based upon respondent's failure to obtain probate-court approval for his fees before accepting payment, the panel and board found that respondent violated Prof.Cond.R. 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), 8.4(d) (prohibiting conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting conduct that adversely reflects upon the lawyer's fitness to practice law). We accept these findings of fact and misconduct.

### Sanction

{¶ 14} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh the evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

---

3. R.C. 2109.50 permits the filing of a complaint in the probate court of the county having jurisdiction of the administration of a trust estate "against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate," to aid in the discovery and recovery of assets.

{¶ 15} The board found that four of the nine aggravating factors set forth in BCGD Proc.Reg. 10(B)(1) are present, including a pattern of misconduct, multiple offenses, vulnerability of and resulting harm to victims of the misconduct, and failure to make restitution. BCGD Proc.Reg. 10(B)(1)(c), (d), (h), and (i). Additionally, the board found that respondent attempted to minimize his misconduct by claiming to have had a "close personal relationship" with the client. Although he claimed that she was "very sharp mentally" and that he was not trying to take advantage of her, respondent also acknowledged that his client was vulnerable and that he was trying to protect her from others who were trying to take advantage of her. In mitigation, the board found only that respondent has no prior disciplinary record in his 30 years of practice. BCGD Proc.Reg. 10(B)(2)(a).

{¶ 16} Relator argued that respondent should be suspended from the practice of law for two years with one year stayed on conditions, including the payment of restitution and the completion of a three-year OLAP contract. In support of its recommended sanction, relator cited our decisions in *Toledo Bar Assn. v. Cook*, 97 Ohio St.3d 225, 2002-Ohio-5787, 778 N.E.2d 40, imposing a one-year suspension with six months stayed on an attorney who prepared a will naming the attorney's siblings' corporation as a beneficiary, when the testator was not related to the attorney's siblings, and *Disciplinary Counsel v. Kelleher*, 102 Ohio St.3d 105, 2004-Ohio-1802, 807 N.E.2d 310, imposing the same sanction on an attorney who prepared an inter vivos trust for an unrelated client, naming the attorney's wife, children, and grandchildren as beneficiaries. Relator also cited our decision in *Disciplinary Counsel v. Dettinger*, 121 Ohio St.3d 400, 2009-Ohio-1429, 904 N.E.2d 890, imposing a six-month stayed suspension on an attorney who accepted a loan from a client without disclosing the attendant risks created by their conflicting interests, and failed to advise the executor of the client's estate of the potential conflict the loan caused before he assumed

representation of the estate. Mitigating factors in *Dettinger* included the respondent's cooperative attitude throughout the disciplinary proceedings and his lack of a prior disciplinary record, while the sole aggravating factor was the respondent's commission of multiple offenses. Id. at ¶ 9.

{¶ 17} After weighing respondent's *three* incidents of misconduct in this case, the aggravating and mitigating factors, and our precedent, the panel recommended that respondent be suspended from the practice of law for two years, with one year stayed on the condition that he pay restitution to the party harmed by the misconduct in Count Four. The panel expressly refused to recommend that we impose the conditions that respondent (1) pay restitution to the first client, based upon his claimed bankruptcy discharge, or (2) complete his OLAP contract, because it was not clear from the record which issues that contract was intended to address.

{¶ 18} The board adopted the panel's findings of fact and conclusions of law, but, citing respondent's "serious acts of fraud and misconduct," it recommends that we suspend respondent for two years with no stay and that we condition his reinstatement upon the payment of restitution to the party harmed by his misconduct in Count Four.

*Request for Remand*

{¶ 19} Respondent contends that he was not capable of either obtaining counsel to represent him or presenting mitigating evidence in this proceeding due to his emotional distress, extreme financial difficulties, and inexperience in dealing with disciplinary matters. Now that he has obtained counsel, he seeks another opportunity to present evidence of his character and reputation, community involvement, payment of restitution with respect to Count Four, and recent activities in furtherance of his OLAP contract. He offers no authority to support this request.

**{¶ 20}** In a few cases, we have permitted respondents to supplement records before this court or have remanded cases to the board for the presentation of mitigating evidence. For example, we remanded a default proceeding after the respondent entered an appearance and moved to supplement the record before this court. *Butler Cty. Bar Assn. v. Portman*, 121 Ohio St.3d 518, 2009-Ohio-1705, 905 N.E.2d 1203, ¶ 2-5. Similarly, we remanded a case for the board's consideration of mitigating evidence when the respondent in a default proceeding answered our motion to show cause with a motion to supplement or remand, proffering "compelling evidence of a mental disability" in explanation for his failure to answer the complaint. *Disciplinary Counsel v. McShane*, 121 Ohio St.3d 169, 2009-Ohio-746, 902 N.E.2d 980, ¶ 2-3. We have emphasized that "attorneys have an obligation to assist in disciplinary matters and that the record should be developed in the answers and hearings prior to reaching this court." *Dayton Bar Assn. v. Stephan*, 108 Ohio St.3d 327, 2006-Ohio-1063, 843 N.E.2d 771, ¶ 5, citing *Cleveland Bar Assn. v. Witt* (1999), 85 Ohio St.3d 9, 11, 706 N.E.2d 763. Therefore, we have stated that we will consider supplements to the record, "only under the most exceptional circumstances." *Stephan* at ¶ 5.

**{¶ 21}** In this case, despite having received notice of the date and time of the panel hearing, respondent failed to appear. Nevertheless, the panel opted to delay its ruling on the matter and gave respondent a second chance to present his case. Although an OLAP employee had advised him to obtain counsel in this disciplinary matter, respondent appeared pro se. Because he has had *two* opportunities to present mitigating evidence and has failed to demonstrate any exceptional circumstances warranting a remand, we will not grant respondent a *third* opportunity to present evidence in mitigation.

*Severity of Sanction*

**{¶ 22}** Respondent agrees that *Cook,* 97 Ohio St.3d 225, 2002-Ohio-5787, 778 N.E.2d 40, and *Kelleher,* 102 Ohio St.3d 105, 2004-Ohio-1802, 807 N.E.2d

310, set forth an appropriate sanction for violations of DR 5-101(A)(2) (one-year suspension with six months stayed) and that *Dettinger*, 121 Ohio St.3d 400, 2009-Ohio-1429, 904 N.E.2d 890, sets forth an appropriate sanction for violations of DR 5-101(A)(1) and 5-101(A)(4) (a lawyer shall not enter into a business transaction with a client without full disclosure of potential conflict of interest) (six-month stayed suspension). He contends, however, that the board's recommended sanction of a two-year suspension with no stay is too harsh for his misconduct.

**{¶ 23}** First, he contends that the board's recommended sanction is "contrary to precedent." In support of this argument, respondent cites *Cincinnati Bar Assn. v. Hovey* (1997), 78 Ohio St.3d 495, 678 N.E.2d 1369; *Disciplinary Counsel v. Baldwin* (1996), 74 Ohio St.3d 592, 660 N.E.2d 1145; and *Akron Bar Assn. v. Markovich*, 117 Ohio St.3d 313, 2008-Ohio-862, 883 N.E.2d 1046.

**{¶ 24}** In *Hovey*, we imposed a six-month stayed suspension on an attorney who (1) mortgaged her residence to a client in exchange for a $10,000 loan without disclosing all of the transaction details to the client, (2) failed to record the mortgage, and (3) failed to disclose the existence of the loan on a subsequent residential-loan application. And in *Baldwin*, we imposed a public reprimand on an attorney who purchased a client's property at the fourth attempted auction of the property. Id. at 592-593. The attorneys in *Hovey* and *Baldwin*, however, did not place their clients in jeopardy of substantial financial loss and their cases did not present any other aggravating factors. Indeed, the client in *Baldwin* ultimately benefitted from the misconduct when the attorney deeded the auctioned property back to the client along with the lucrative lease he had obtained for the property. *Baldwin* at 593.

**{¶ 25}** In *Markovich*, we imposed a one-year suspension with six months stayed on an attorney who engaged in multiple acts of misconduct, including neglect of entrusted legal matters, abandonment of a client's case, disobedience of

court orders, inappropriate and discourteous behavior in court, and commingling of personal and client funds. Although that attorney committed multiple acts of misconduct, we note that several mitigating factors were present, including the respondent's lack of a prior disciplinary record, his payment of restitution, and his otherwise good character and reputation. Id. at ¶ 21.

{¶ 26} In contrast, the aggravating factors here outweigh the sole mitigating factor — respondent's lack of a prior disciplinary record. Specifically, respondent has engaged in a pattern of misconduct involving multiple offenses of taking advantage of an elderly and vulnerable client for his own personal gain. Although the client successfully amended the trust, revoking the $25,000 aggregate bequest to respondent's children before her death, her estate will never recover the $12,250 balance of the loan to respondent if, as respondent now claims, the debt was discharged in bankruptcy. Respondent also took fees from other clients in a separate case without obtaining the requisite approval from the probate court and then failed to pay court-ordered restitution to those clients. In light of these facts, respondent's conduct is more serious than that of the attorney in *Markovich*.

{¶ 27} Next, respondent contends that the board erroneously departed from the panel's recommended sanction based upon its finding that he had committed "serious acts of fraud." He notes that (1) relator made no allegations of fraud in his complaint or his amended complaint, (2) the panel made no findings of fact or conclusions of law regarding fraudulent misconduct, and (3) the record is devoid of any evidence of fraud.

{¶ 28} While respondent's conduct toward each of these clients was unethical and his concealment of assets in Count Four was "quasi criminal in nature," see *In re Estate of Fife* (1956), 164 Ohio St. 449, 58 O.O. 293, 132 N.E.2d 185, paragraph one of the syllabus, relator has neither alleged nor proven that respondent has committed a fraud upon the clients in these counts.

Therefore, the board's finding of "serious acts of fraud" is not supported by the record and thus cannot support its upward deviation from the panel's recommended sanction.

{¶ 29} Having examined the respondent's conduct, reviewed our decisions in *Cook*, *Kelleher*, and *Dettinger*, and weighed the aggravating and mitigating factors discussed above, we agree with the panel's conclusion that the appropriate sanction for respondent's multiple acts of misconduct is a two-year suspension, with one year stayed on conditions.

{¶ 30} Accordingly, Kenneth Norman Shaw is suspended from the practice of law in the state of Ohio for two years, with one year stayed on the conditions that he (1) commit no further acts of misconduct, (2) pay restitution of $1,200 to the party harmed by the misconduct in Count Four, and (3) *either* pay restitution of $12,250 to the estate of the client affected by his misconduct in Count Two *or* submit documentary evidence to the court to prove that the financial obligation was discharged in bankruptcy. If respondent fails to meet the stated conditions, the stay of his suspension will be lifted, and respondent will serve the entire two-year suspension from the practice of law. Moreover, respondent will not be reinstated to the practice of law until he submits documentary evidence to the court to prove that he has made restitution or that his debt was discharged in bankruptcy. Costs are taxed to respondent.

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

O'CONNOR, J., dissents and would suspend respondent from the practice of law in Ohio for two years.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Senior Assistant Disciplinary Counsel, for relator.

Koblentz & Penvose, L.L.C., Richard S. Koblentz, and Bryan L. Penvose, for respondent.

_____