**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Toledo Bar Assn. v. Bishop,* **Slip Opinion No. 2019-Ohio-5288.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-5288

TOLEDO BAR ASSOCIATION *v.* BISHOP.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Toledo Bar Assn. v. Bishop,* Slip Opinion No. 2019-Ohio-5288.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension, with the second year conditionally stayed.*

(No. 2019-0804—Submitted August 6, 2019—Decided December 24, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-054.

_____

**Per Curiam.**

{¶ 1} Respondent, Jerry James Bishop II, of Toledo, Ohio, Attorney Registration No. 0016287, was admitted to the practice of law in Ohio in 1979.

{¶ 2} In an April 1, 2019 amended complaint, relator, Toledo Bar Association, alleged that Bishop committed five ethical violations by causing his elderly clients,  Isadore and Helen Urbanski, to amend an annuity contract to

designate Bishop's wife and his sons' Boy Scout troop as contingent beneficiaries and then giving false testimony about that conduct during the ensuing disciplinary investigation.

{¶ 3} The parties entered into stipulations of fact and mitigating factors and submitted 33 stipulated exhibits. After a hearing before a panel of the Board of Professional Conduct, the board issued a report finding that Bishop committed four of the five alleged violations and recommends that he be suspended from the practice of law for two years with one year stayed on the condition that he commit no further misconduct.

{¶ 4} Based on our review of the record, we accept the board's findings of misconduct and recommended sanction.

**Misconduct**

{¶ 5} Bishop met the Urbanskis in the summer of 2013 and agreed to represent them with regard to their estate-planning needs.

{¶ 6} In October 2013, the Urbanskis designated their church as the contingent beneficiary of an annuity contract that they had purchased from New York Life Insurance Company in 2006. But on December 21, 2013, they signed a change-of-beneficiary form that designated Bishop's wife and his sons' Boy Scout troop as the contingent beneficiaries of that annuity. The form, which was completed by hand, identified Bishop's wife by her maiden name, Maureen McQuillen, though she had not used that name for nearly 20 years. The next day, the Urbanskis executed their wills, with Bishop and his wife serving as their witnesses.

{¶ 7} In October 2015, PNC Investments sent the Urbanskis a letter advising them that although they had designated McQuillen and a Boy Scout troop as the contingent beneficiaries of their New York Life annuity contract, they had not designated a primary beneficiary for that annuity. A friend who helped care for the Urbanskis saw the letter when he reviewed their mail. After Isadore Urbanski

died in March 2016, the friend attached a copy of the letter to a grievance he filed with relator.

{¶ 8} In Bishop's initial response to the grievance in June 2017, he did not acknowledge that he was involved in changing the beneficiary designation on the Urbanskis' annuity. He did state, however, that neither his wife nor the Boy Scout troop could be named as a beneficiary and that he would recommend that his client take immediate corrective action.

{¶ 9} The next month, Helen Urbanski executed a new form designating herself as the primary beneficiary and her estate as the contingent beneficiary of the annuity. Helen died on December 4, 2017, and the annuity passed to her estate. Bishop probated the estate and waived his executor's fee to allow a claim for the services provided by the Urbanskis' friend without reducing Helen's charitable bequests.

{¶ 10} During a September 2018 show-cause hearing before relator's certified grievance committee, Bishop testified about his relationship with the Urbanskis. When the committee showed Bishop a copy of the change-of-beneficiary form, he expressed his surprise that his wife's maiden name, address, birthdate, and complete Social Security number and the Boy Scout troop number had been handwritten on the form. He testified that he had no explanation of how that had happened, but he never stated that he recognized the handwriting on the form as his own.

{¶ 11} At his May 2019 disciplinary hearing, Bishop repeatedly testified that he had virtually no recollection of the events surrounding the completion of the 2013 change-of-beneficiary form—even though he recalled the events surrounding the contemporaneous execution of the Urbanskis' wills. He also claimed that his actions were permitted by Prof.Cond.R. 1.8(c) (prohibiting a lawyer from preparing on behalf of a client an instrument giving the lawyer or a person related to the lawyer any gift unless the lawyer or other recipient of the gift is related to the client)

because he had maintained a close familial relationship with the Urbanskis. *See* Prof.Cond.R. 1.8(c)(1) (defining "person related to the lawyer" as including "a spouse, child, grandchild, parent, grandparent, sibling, or other relative or individual with whom the lawyer or the client maintains a close, familial relationship"). Ultimately, Bishop admitted that the handwriting on the 2013 change-of-beneficiary form was his.

{¶ 12} The board found that Bishop violated Prof.Cond.R. 1.8(c) by preparing the form by which the Urbanskis designated his wife as a contingent beneficiary of their annuity; the board rejected Bishop's reliance on Prof.Cond.R. 1.8(c)(1) because neither he nor his wife was related to the Urbanskis. The board also found that Bishop's designation of his wife as a beneficiary of the annuity was sufficiently egregious as to warrant a separate violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

{¶ 13} In addition, the board found that Bishop violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from failing to disclose a material fact in response to a demand for information from a disciplinary authority) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) by falsely testifying that he had virtually no recollection of the events surrounding the Urbanskis' change of annuity beneficiaries.

{¶ 14} We adopt these findings of misconduct and in accord with the board's recommendation, dismiss the remaining alleged rule violation.

**Sanction**

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} As aggravating factors, the board found that Bishop acted with a dishonest or selfish motive in an attempt to acquire what would have been approximately $38,000 at the time of Helen Urbanski's death, failed to cooperate in the disciplinary proceeding, made false statements during the disciplinary process, and refused to acknowledge the wrongful nature of his misconduct. *See* Gov.Bar R. V(13)(B)(2), (5), (6), and (7).

{¶ 17} The parties stipulated to two mitigating factors—the absence of a prior disciplinary record and letters attesting to Bishop's good character and reputation. *See* Gov.Bar R. V(13)(C)(1) and (5). The board, however, accorded little weight to Bishop's character evidence because the authors of the letters had no knowledge of the nature of the charges against him.

{¶ 18} In determining the appropriate sanction in this case, the board considered several decisions imposing suspensions of one year or less on attorneys who engaged in similar misconduct. *See Toledo Bar Assn. v. Cook*, 97 Ohio St.3d 225, 2002-Ohio-5787, 778 N.E.2d 40 (imposing a one-year suspension with six months conditionally stayed on an attorney who prepared a will on behalf of an unrelated client that named the attorney's siblings' corporation as a beneficiary); *Disciplinary Counsel v. Kelleher*, 102 Ohio St.3d 105, 2004-Ohio-1802, 807 N.E.2d 310 (imposing a one-year suspension with six months stayed on an attorney who drafted an inter vivos trust for an unrelated client that named the attorney's wife, children, and grandchildren as beneficiaries); *Mahoning Cty. Bar Assn. v. Theofilos*, 36 Ohio St.3d 43, 521 N.E.2d 797 (1988) (imposing a one-year suspension on an attorney who, for an unrelated client, prepared a will and established joint-and-survivorship accounts through which the attorney and his son received more than $200,000).

{¶ 19} The board found that in addition to engaging in conduct similar to the conduct at issue in *Cook*, *Kelleher*, and *Theofilos*, Bishop gave false testimony about his conduct during the ensuing disciplinary investigation. Therefore, the

board determined that a more severe sanction is necessary to protect the public from future harm and recommends that we suspend Bishop from the practice of law for two years with one year stayed on the condition that he engage in no further misconduct.

{¶ 20} We accept the board's recommendation and note that we imposed the same sanction on an attorney who, among other things, named his own children as the beneficiaries of an elderly client's revocable living trust, accepted an unsecured loan from the same client without advising the client of the inherent conflict of interest or suggesting that she seek the advice of independent counsel, and, like Bishop, attempted to minimize his misconduct by claiming to have had a close personal relationship with the client. *See Disciplinary Counsel v. Shaw*, 126 Ohio St.3d 494, 2010-Ohio-4412, 935 N.E.2d 405.

{¶ 21} Accordingly, Jerry James Bishop II is suspended from the practice of law in Ohio for two years with the second year stayed on the condition that he engage in no further misconduct. If Bishop fails to comply with the condition of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Bishop.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Robison, Curphey & O'Connell, L.L.C., and Robert C. Tucker; Dean A. Horrigan; and Joseph P. Dawson, Bar Counsel, for relator.

Coughlan Law Firm, L.L.C., and Jonathan Coughlan, for respondent.

_____