DISCIPLINARY COUNSEL *v*. JOHNSTON.

[Cite as *Disciplinary Counsel v. Johnston*,

121 Ohio St.3d 403, 2009-Ohio-1432.]

*Attorneys — Misconduct — Conduct adversely reflecting on fitness to practice law — Failure to maintain client funds in separate account — One-year suspension stayed on conditions.*

(No. 2008-2447 — Submitted February 4, 2009 — Decided April 2, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-017.

_____

**Per Curiam**.

{¶ 1} Respondent, Wesley Alton Johnston of Wadsworth, Ohio, Attorney Registration No. 0061166, was admitted to the practice of law in Ohio in 1993. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for one year, staying the suspension on remedial conditions, based on findings that he impermissibly commingled his personal and client funds by using his client trust account for operating expenses. We agree that respondent committed this professional misconduct as found by the board and that a one-year stayed suspension is appropriate.

{¶ 2} Relator, Disciplinary Counsel, charged respondent in a one-count complaint with violations of the current Rules of Professional Conduct and the Disciplinary Rules of the former Code of Professional Responsibility.[1] A panel

_____

1. In effect, relator charged respondent with continuing violations of the applicable rules for misconduct occurring before and after February 1, 2007, the effective date of the Rules of Professional Responsibility, which supersede the Code of Professional Conduct. In specifying

appointed by the board heard the case, including the parties' extensive stipulations and respondent's testimony, made findings of misconduct, and recommended an 18-month, conditionally stayed suspension from practice. The board accepted the findings of misconduct but recommended a conditionally stayed suspension of one year.

{¶ 3}   The parties have not objected to the board's report.

## Misconduct

{¶ 4}   Upon passing the bar, respondent worked for approximately one and one-half years for another attorney and then opened his own practice, mainly accepting court-appointed juvenile and criminal cases. As of the November 2008 panel hearing, respondent maintained offices in Wadsworth, Youngstown, and Cleveland. He devoted approximately half of his practice to court-appointed criminal work but also represented clients in domestic-relations disputes and Social Security claims, and in cases involving contract and business litigation, workers' compensation, and personal injury.

{¶ 5}   Soon after opening his solo practice, respondent opened a bank account for holding client funds in trust, an account he has always maintained. But because of financial difficulties, respondent eventually started overdrawing his operating bank account, which led to large bank overdraft charges and other fees. He then switched to using his client trust account both for entrusted funds and as his operating account. From January 2006 through October 2007, respondent admittedly commingled funds in his client trust account by depositing client funds, personal funds, earned attorney fees, and unearned retainer fees into the account.

---

both the former and current rules for the same acts, the allegations compose a single ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, fn. 1.

**{¶ 6}** Respondent made nine deposits that had no relation to any client, for a total of $3,370.63, into his client trust account during 2006. The bulk of these deposits came from rent money that respondent had collected for the landlord from another tenant in his office building. He had deposited other funds just to avoid overdrawing the account.

**{¶ 7}** During 2006, respondent cashed 37 checks from the trust account, withdrawing a total of $12,327.44. He cashed 18 checks from the trust account during 2007, withdrawing another $6,455. Respondent wrote 44 checks from the client trust account during 2006 and 2007 to pay personal obligations. He also routinely made ATM or debit withdrawals and transferred funds from the account to pay both personal and business creditors. Respondent insists that he had earned all funds that he withdrew, and relator did not charge that he had misappropriated any client funds.

**{¶ 8}** Moreover, respondent overdrew his client trust account during 2006 and 2007. His bank assessed him for either overdraft or insufficient-fund charges 22 times. The negative balance in respondent's trust account triggered the bank's obligation to report the impropriety to relator, which commenced the investigation that led to the underlying complaint.

**{¶ 9}** Respondent ended up bouncing one check to a client, but he quickly covered the check, paying the client by a certified check that included associated bank charges. Respondent also did not have an acceptably reliable recordkeeping system to allow him to account to clients for funds in his possession.

**{¶ 10}** Based on the parties' stipulations, the panel and board found clear and convincing evidence that respondent had violated DR 1-102(A)(6) and its counterpart, Prof.Cond.R. 8.4(h) (both prohibiting a lawyer from engaging in conduct that adversely reflects upon his fitness to practice law); DR 9-102(A) (all funds of clients paid to a lawyer shall be deposited in one or more identifiable

bank accounts containing no funds belonging to the lawyer) and its counterpart, Prof.Cond.R. 1.15(a) (a lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with representation separate from the lawyer's own property); and DR 9-102(B)(3) (a lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of a lawyer and render appropriate accounts to his client regarding them). We accept these findings of misconduct.

**Sanction**

{¶ 11} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated by the lawyer in question and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 12} We have already discussed respondent's violations of duties owed to his client and the profession. With respect to precedent, the board's recommendation of a one-year suspension, all stayed on conditions, is within the range of sanctions we have imposed in similar cases.

{¶ 13} As the board observed, we suspended the lawyer in *Disciplinary Counsel v. Newcomer,* 119 Ohio St.3d 351, 2008-Ohio-4492, 894 N.E.2d 50, from practice for six months, staying the entire suspension, because he had used his client trust account for his personal banking needs after the bank closed his

personal account. That lawyer overdrew the client trust account on two occasions. We found him in violation of DR 1-102(A)(6) and 9-102(A).

{¶ 14} By contrast, the lawyer in *Disciplinary Counsel v. Vogtsberger,* 119 Ohio St.3d 458, 2008-Ohio-4571, 895 N.E.2d 158, commingled his own funds with those held in trust for clients to shield the money from creditor garnishment. Because that lawyer committed the extra impropriety of acting dishonestly to hide personal resources, a violation of DR 1-102(A)(4), we suspended him for two years with a stay of only the second year.

{¶ 15} The board found respondent's misuse of his client trust account of greater gravity than the misuse in *Newcomer* but less than the misuse in *Vogtsberger.* We agree. Moreover, though respondent engaged in a pattern of misconduct, an aggravating factor under BCGD Proc.Reg. 10(B)(1)(c), he has presented much in mitigation. Respondent has no previous record of professional discipline, has incorporated a new accounting system for his practice, and has cooperated fully in the disciplinary proceedings, which are all mitigating factors under BCGD Proc.Reg. 10(B)(2)(a), (c), and (d). Fortunately, no client suffered significant financial harm due to respondent's misconduct. Respondent's good character and reputation in his community and his charitable work on behalf of victims of Huntington's disease, disadvantaged clients, and his church also weigh in his favor.

{¶ 16} We suspend respondent from the practice of law in Ohio for one year; however, the suspension is stayed on the condition that he complete a one-year monitored probation in accordance with Gov.Bar R. V(9). The monitoring attorney, to be appointed by relator, shall provide oversight as to respondent's business practices, especially as they relate to management of his client trust account. As a second condition of the stay, respondent shall complete, in addition to the other continuing legal education ("CLE") requirements under Gov.Bar. R. X, six hours of CLE in law-office management and accounting. If respondent

fails to comply with the terms of the stay and probation, the stay will be lifted, and he will serve the entire one-year suspension.

{¶ 17} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Stacey Solocheck Beckman, Assistant Disciplinary Counsel, for relator.

Paul Knott, for respondent.

_____