**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Adelstein*, **Slip Opinion No. 2020-Ohio-3000.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3000

DISCIPLINARY COUNSEL *v*. ADELSTEIN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Adelstein*, Slip Opinion No. 2020-Ohio-3000.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Conditionally stayed one-year suspension.*

(No. 2019-0801—Submitted November 13, 2019—Decided May 21, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-058.

_____

**Per Curiam.**

{¶ 1} Respondent, Carol Beth Adelstein, of Cleveland, Ohio, Attorney Registration No. 0040546, was admitted to the practice of law in Ohio in 1988. We have suspended her license to practice law on two prior occasions for failing to timely pay attorney-registration fees. *See In re Attorney Registration Suspension of Adelstein*, 116 Ohio St.3d 1420, 2007-Ohio-6463, 877 N.E.2d 305; *In re Attorney*

*Registration Suspension of Adelstein*, 130 Ohio St.3d 1420, 2011-Ohio-5627, 956 N.E.2d 310.

{¶ 2} In a March 21, 2019 amended complaint, relator, disciplinary counsel, charged Adelstein with multiple violations of the Rules of Professional Conduct arising from the mismanagement of two client trust accounts. The complaint alleged that from April 2014 through January 2019, Adelstein accumulated 19 account-overdraft and insufficient-funds notifications.

{¶ 3} The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors and agreed that the appropriate sanction for Adelstein's misconduct is a conditionally stayed one-year suspension. After conducting a hearing, a panel of the Board of Professional Conduct issued a report adopting the parties' stipulations of fact, finding that Adelstein committed the stipulated misconduct, and recommending that she be suspended from the practice of law for one year, with six months of the suspension stayed on the conditions recommended by the parties. The board adopted the panel's report and recommendation.

{¶ 4} Adelstein objects to the board's recommended sanction, arguing that a fully stayed suspension is more appropriate in this case. For the reasons that follow, we sustain Adelstein's objection and suspend her from the practice of law for one year, fully stayed on conditions.

**Misconduct**

*Count One: General Mismanagement of Client Trust Account*

{¶ 5} On April 15, 2014, and May 2, 2015, Adelstein did not have enough funds in her KeyBank client trust account to pay for two checks that she had written. On December 5, 2015, Adelstein executed an affidavit admitting that she had not managed her client trust account as required by the Rules of Professional Conduct. However, relator found that Adelstein had neither converted client funds nor had she harmed any of her clients. Accordingly, relator closed the investigation after

obtaining Adelstein's sworn assurances that going forward, she would comply with the requirements of Prof.Cond.R. 1.15 regarding her client trust account. Adelstein also understood that her affidavit and any evidence that relator collected as a result of that investigation could be used against her in future prosecutions.

{¶ 6} In September 2016, KeyBank informed relator that Adelstein's client trust account once again contained insufficient funds to pay a $135 check that she had made payable to PetSmart. Relator opened a new investigation and subsequently received five additional overdraft notifications from KeyBank, all of which were attempts by VW Credit to debit $300 payments from Adelstein's client trust account. KeyBank honored the first payment request, which created an overdraft, and then rejected the remaining requests due to insufficient funds. In September 2017, KeyBank rejected two more payment requests—both from Cash Central Ohio Loan.

{¶ 7} Adelstein generally cooperated with relator's investigation. Although her responses were not always timely or complete, she complied with relator's subpoena duces tecum and was deposed in December 2017.

{¶ 8} Throughout the investigation and the resulting disciplinary proceedings, Adelstein attributed the successive overdrafts of her client trust account to the effects of her multiple sclerosis and the medication she had been prescribed to treat it. And although she did not recall writing the $135 check to PetSmart, she acknowledged that the check must have been written for the payment of a personal expense. Adelstein also admitted that the attempted payments to VW Credit and Cash Central Ohio Loan were for personal expenses but that she thought she had authorized VW Credit to debit only one payment from her client trust account. She acknowledged that KeyBank had closed her personal and operating accounts for excessive overdraft activity.

{¶ 9} Adelstein also admitted to depositing the proceeds of personal loans into her client trust account, commingling personal and client funds in the account

at times, and failing to maintain a general ledger for the KeyBank account. Additionally, she admitted to failing to deposit unearned fees from two clients into her client trust account. And, although Adelstein initially denied it, she eventually admitted to failing to reconcile her KeyBank client trust account on a monthly basis.

{¶ 10} The parties stipulated and the board found that Adelstein's conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account, the date, amount, and client affected by each credit and debit, and the balance in the account), 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account), 1.15(b) (permitting a lawyer to deposit his or her own funds in a client trust account for the sole purpose of paying or obtaining a waiver of bank service charges), and 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred). The parties also stipulated and the board found that Adelstein's conduct was sufficiently egregious to constitute a violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21. We adopt these findings of misconduct.

*Count Two: Mismanagement of Disputed Funds*

{¶ 11} In early October 2018, relator was notified by KeyBank that it had declined three separate $3,500 electronic-payment requests from a company named Square[1] due to Adelstein's client trust account containing insufficient funds. By

---

1. Square is a business that allows individuals and small businesses to accept credit-card payments over the Internet remotely or by swiping a customer's credit card through a small card reader that may be attached to a cell phone or tablet computer. *See*

that time, Adelstein had opened a second client trust account at PNC Bank. And in mid-October, PNC Bank informed relator that it had declined a $1,570.15 electronic-payment request from Square due to Adelstein's client trust account at that bank containing only $127.23.

{¶ 12} Adelstein responded to relator's letters of inquiry and stated that the overdrafts arose from a fee dispute with a former client, Jason Kubick. She reported that Kubick had paid a $3,500 retainer by credit card through Square, which had been deposited into her KeyBank client trust account. Subsequently, Adelstein withdrew $3,100 of the $3,500 from her KeyBank client trust account as earned fees. Adelstein's attorney-client relationship with Kubick eventually became hostile and confrontational, and Adelstein ended up withdrawing as Kubick's attorney. Kubick then attempted to reverse his entire payment of $3,500 through Square and Adelstein's KeyBank client trust account. But when Square informed Adelstein that it would be withdrawing $3,500 from her KeyBank client trust account, Adelstein failed to inform Square that that account contained insufficient funds. Moreover, Adelstein provided Square with the account number for her PNC Bank client trust account, even though none of the $3,500 had ever been deposited into that account.

{¶ 13} Adelstein stipulated that by failing to redeposit any of Kubick's retainer into her KeyBank client trust account pending the resolution of the fee dispute, she violated Prof.Cond.R. 1.15(e) (requiring a lawyer in possession of funds in which two or more persons, one of whom may be the lawyer, claim an interest to hold those funds in the lawyer's client trust account until the dispute is resolved). She also stipulated that she engaged in dishonest conduct in violation of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) when she provided Square with

https://squareup.com/us/en/hardware/contactless-chip-reader (accessed Mar. 3, 2020) [https://perma.cc/E9RH-YWXU].

information that allowed the company to withdraw funds from her PNC Bank client trust account—even though she knew that Kubick's retainer had not been deposited into that account. In addition, Adelstein stipulated that she failed to perform and retain a monthly reconciliation of her KeyBank and PNC Bank client trust accounts from September 1, 2018, through January 31, 2019, in violation of Prof.Cond.R. 1.15(a)(5). The board found that Adelstein committed the stipulated misconduct, and we adopt those findings.

### Recommended Sanction

{¶ 14} When recommending the sanctions to be imposed for attorney misconduct, the board considers all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 15} The parties stipulated that two aggravating factors are present— Adelstein has four instances of prior discipline and she engaged in multiple offenses in this case. *See* Gov.Bar R. V(13)(B)(1) and (4). The board accepted those stipulations but found that Adelstein had only two instances of prior discipline.[2] The board also found an additional aggravating factor—that Adelstein acted with a dishonest or selfish motive by paying personal expenses from her client trust account because she was experiencing personal financial hardship. *See* Gov.Bar R. V(13)(B)(2).

{¶ 16} As mitigating factors, the board adopted the parties' stipulations that Adelstein made full and free disclosure to the board, demonstrated a cooperative attitude toward the disciplinary proceedings, and caused no harm to her clients or other persons. *See* Gov.Bar R. V(13)(C)(4). The board also attributed some mitigating effect to letters from two of Adelstein's clients that attested to her

---

2. Pursuant to Gov.Bar R. X(17)(C), the monetary penalties imposed in 2010 and 2012 for Adelstein's failure to timely satisfy continuing-legal-education requirements do not constitute prior discipline.

competence and capability as an attorney. However, the board rejected the parties' stipulation that Adelstein did not have a dishonest or selfish motive and also declined to attribute any mitigating effect to Adelstein's multiple sclerosis or to the effects of any medications that she had been prescribed to treat that illness.

{¶ 17} The parties agreed that the appropriate sanction for Adelstein's misconduct is a one-year suspension, fully stayed on the conditions that she complete at least six hours of continuing legal education ("CLE") focused on client-trust-account management and recordkeeping, serve a two-year period of monitored probation focused on law-office and client-trust-account management, and commit no further misconduct.

{¶ 18} The board reviewed several cases in which we imposed fully stayed one-year suspensions on attorneys who used their client trust accounts to pay for personal and business expenses. *See, e.g.*, *Disciplinary Counsel v. Daniell*, 140 Ohio St.3d 67, 2014-Ohio-3161, 14 N.E.3d 1040 (after averring that he would rectify deficient accounting practices in exchange for the dismissal of an earlier disciplinary investigation, the attorney continued to commingle personal funds with client funds in his client trust account, used it as a personal account, and overdrew the account); *Disciplinary Counsel v. Johnston*, 121 Ohio St.3d 403, 2009-Ohio-1432, 904 N.E.2d 892 (the attorney commingled personal funds with client funds in his client trust account, used the account to pay personal and business expenses, overdrew the account 22 times, and bounced a check to a client).

{¶ 19} However, the board found that the facts of this case were most closely aligned with those of *Disciplinary Counsel v. Alexander*, 133 Ohio St.3d 232, 2012-Ohio-4575, 977 N.E.2d 633. In *Alexander*, we suspended an attorney for one year and stayed six months of the suspension on conditions for depositing personal funds into his client trust account, using the account to pay personal and business expenses, failing to maintain a ledger of client funds, failing to routinely reconcile his client trust account, and splitting a fee with a lawyer who was not in

the same firm and without the client's consent. Based on *Alexander*, the board recommended that we suspend Adelstein from the practice of law for one year and stay six months of the suspension on the conditions recommended by the parties.

**Adelstein's Objection**

{¶ 20} Adelstein objects to the board's recommended sanction for three reasons. She argues that (1) the board failed to attribute mitigating effect to her relevant physical and mental disorders, (2) the board improperly rejected the parties' stipulation that she acted without a dishonest or selfish motive, and (3) because a partially stayed one-year suspension is not commensurate with the sanctions imposed for comparable misconduct, the board improperly rejected the parties' stipulation that the suspension be fully stayed. Relator contends that the board's findings and recommendation are supported by the record and applicable case law but maintains that a fully stayed one-year suspension on the specified conditions is an appropriate disposition in this case. For the reasons explained below, Adelstein's first two arguments lack merit, but we are persuaded that a fully stayed suspension is the appropriate sanction in this case.

**Analysis**

{¶ 21} Adelstein's first argument in support of her objection asserts that the board should have accorded mitigating effect to the stipulation that she suffers from multiple sclerosis. She also asserts that although she did not present the board with any mitigating evidence that she also suffers from chronic depression and anxiety, she would like the opportunity to present evidence of those conditions for consideration. The parties stipulated that Adelstein suffers from multiple sclerosis and she testified that some of her medication affects her judgment. However, she did not present any documentary or testimonial evidence from her treating professionals about having chronic depression or anxiety and she only briefly mentioned her alleged depression in the proceedings below. She therefore failed to establish that she has been diagnosed with a mental disorder and that her physical

or mental disorder(s) contributed to cause her misconduct, as required by Gov.Bar R. V(13)(C)(7)(a) and (b). Moreover, she did not present any evidence that she has sustained a period of successful treatment for any disorder, let alone a prognosis from a qualified healthcare professional that she is capable of engaging in the competent, ethical, and professional practice of law, as required by Gov.Bar R. V(13)(C)(7)(c) and (d). She has therefore failed to present sufficient evidence to establish a physical or mental disorder as a mitigating factor in this case.

{¶ 22} At oral argument, Adelstein's counsel requested that we remand this matter to the board and permit her to cure those evidentiary deficiencies as we did in *Disciplinary Counsel v. Eynon*, 135 Ohio St.3d 274, 2013-Ohio-953, 985 N.E.2d 1285. However, attorneys have an obligation to cooperate in disciplinary investigations and proceedings and we expect the record to be developed in the answers and hearings before a case reaches this court. *See* Gov.Bar R. V(9)(G); *Dayton Bar Assn. v. Stephan*, 108 Ohio St.3d 327, 2006-Ohio-1063, 843 N.E.2d 771, ¶ 5. Consequently, "[w]e will consider supplements to the record only under the most exceptional circumstances." *Id.*

{¶ 23} When this court has remanded cases to the board for consideration of mitigating evidence, it has typically done so when a respondent has failed to participate in the disciplinary proceedings until we have issued an order directing the respondent to show cause why we should not adopt the board's recommendation to enter a default judgment against him. *See, e.g.*, *Eynon* at ¶ 2-4; *Trumbull Cty. Bar Assn. v. Ohlin*, 133 Ohio St.3d 241, 2012-Ohio-4565, 977 N.E.2d 640, ¶ 3-5, 9; *Butler Cty. Bar Assn. v. Portman,* 121 Ohio St.3d 518, 2009-Ohio-1705, 905 N.E.2d 1203, ¶ 4-5. By contrast, we have declined to allow an attorney to supplement his disciplinary-case record with additional mitigating evidence when the attorney had represented himself in the disciplinary proceedings below. *See, e.g., Disciplinary Counsel v. Shaw*, 126 Ohio St.3d 494, 2010-Ohio-4412, 935 N.E.2d 405, ¶ 19-21 (absent exceptional circumstances, this court will not consider

a motion to supplement the record in a disciplinary case). Because Adelstein fully participated in the proceedings below, had an opportunity to present her mitigating evidence at that time, and has failed to demonstrate any exceptional circumstances, a remand is not appropriate here.

{¶ 24} Adelstein's second argument in support of her objection asserts that the record does not support the board's finding that she acted with a dishonest or selfish motive due to her personal financial hardships. But there is ample evidence to demonstrate that that she acted with a selfish motive by prioritizing her own banking needs over the security of her client's funds during a time when she was experiencing personal financial hardship. In fact, Adelstein admitted that she had failed to deposit some unearned fees into her client trust account and had withdrawn others from that account before having earned them. She also admitted that she deposited the proceeds of personal loans into (and authorized a payday lender to withdraw payments from) her client trust account after KeyBank had closed her personal and operating accounts for excessive overdraft activity. And although she claimed that she had inadvertently wrote a check to PetSmart and authorized her car payment to be deducted from her client trust account, she also testified that she thought she was permitted to pay personal expenses directly from that account, so long as the money had been earned. Moreover, Adelstein engaged in that self-serving conduct after she had provided sworn assurances to relator that she understood her obligations under Prof.Cond.R. 1.15 and that she would comply with all provisions of that rule moving forward and that she would also educate herself on the proper use and maintenance of her client trust account.

{¶ 25} Adelstein also contends that she has not engaged in dishonesty or caused harm to any client. While no client may have been harmed by Adelstein's actions, she stipulated to engaging in dishonest conduct by providing information to Square that allowed the company to attempt to reverse Kubick's $3,500 attorney-

fee payment from Adelstein's PNC Bank client trust account when none of the funds in that account belonged to Kubick.

{¶ 26} Adelstein's third argument in support of her objection asserts that imposing a partially stayed suspension in this case is not commensurate with the sanctions imposed for comparable misconduct in other cases. We agree. Conduct involving dishonesty, fraud, deceit, or misrepresentation usually requires an actual suspension from the practice of law. *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190-191, 658 N.E.2d 237 (1995). However, we have occasionally imposed fully stayed suspensions in cases when an attorney's misconduct involved isolated incidents of dishonesty and the attorney presented significant mitigating evidence. For example, in *Disciplinary Counsel v. Dockry*, 133 Ohio St.3d 527, 2012-Ohio-5014, 979 N.E.2d 313, we imposed a fully stayed one-year suspension on an attorney who deposited personal funds into his client trust account, used the account to pay personal and business expenses, and violated Prof.Cond.R. 8.4(c) by briefly misappropriating client funds to cover a deficiency in his personal checking account. Significant mitigating factors in that case included the absence of a prior disciplinary record, the prompt payment of restitution, Dockry's full cooperation in the disciplinary proceedings, and his good character and reputation in the community.

{¶ 27} Adelstein admitted to failing to deposit unearned fees from two clients into her client trust account, commingling personal funds with client funds in that account, and authorizing or initiating 19 transactions that resulted in overdrafts or insufficient-funds events in that account. We acknowledge that some of Adelstein's actions were taken with a dishonest or selfish motive. In addition, we are troubled that she failed to take corrective action after representing that she would rectify her deficient client-trust-account management practices at the conclusion of relator's first investigation.

**{¶ 28}** Even so, we are convinced that the bulk of Adelstein's violations are the result of her failure to fully understand her obligations under the Rules of Professional Conduct with respect to properly managing her clients' funds and client trust accounts and the result of her status as a sole practitioner with no support staff to assist her with those tasks. In addition, Adelstein has made full and free disclosure to relator and has generally cooperated in this disciplinary proceeding. Her conduct has not caused any harm to her clients or to other people, and two clients have attested to her competence and capability as an attorney. Furthermore, at her disciplinary hearing, she testified that she had opened new personal and operating accounts and keeps her operating-account checks in a separate binder from her client-trust-account checks, which helps her distinguish the two accounts. Relator has also acknowledged that she was in compliance with her client-trust-account obligations at the time of the hearing. In addition, at oral argument before this court, Adelstein's counsel indicated that Adelstein is willing to be assessed by the Ohio Lawyers Assistance Program ("OLAP") and comply with OLAP's recommendations; relator agreed that this would be an appropriate condition in this case.

**{¶ 29}** On these facts, we are persuaded that similar to *Dockry*, 133 Ohio St.3d 527, 2012-Ohio-5014, 979 N.E.2d 313, a one-year suspension, fully stayed on conditions, will best protect the public from future harm—provided that those conditions include additional training in client-trust-account management and recordkeeping, a two-year period of monitored probation, and a comprehensive OLAP assessment to ensure that no disorders will impair Adelstein's practice of law going forward.

**Conclusion**

**{¶ 30}** Accordingly, Carol Beth Adelstein is hereby suspended from the practice of law for one year, fully stayed on the conditions that she (1) complete at least six hours of CLE, in addition to the requirements of Gov.Bar R. X, focused

on client-trust-account management and recordkeeping, (2) submit to a comprehensive OLAP evaluation within 30 days of the date of this order, enter into an OLAP contract for a duration to be determined by OLAP, and comply with all treatment recommendations for the duration of that contract, (3) commit no further misconduct, and (4) serve a two-year period of monitored probation focused on her law-office and client-trust-account management and recordkeeping. If Adelstein fails to comply with the conditions of the stay, the stay will be lifted and she will serve the full one-year suspension. Costs are taxed to Adelstein.

*Judgment accordingly.*

FRENCH, FISCHER, DEWINE, TRAPP, and CANNON, JJ., concur.

O'CONNOR, C.J., would stay only six months of the suspension.

KENNEDY, J., concurs in part and dissents in part, with an opinion.

MARY JANE TRAPP, J., of the Eleventh District Court of Appeals, sitting for DONNELLY, J.

TIMOTHY P. CANNON, J., of the Eleventh District Court of Appeals, sitting for STEWART, J.

---

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 31} I dissent from the majority's decision to sustain respondent Carol Beth Adelstein's objection to the Board of Professional Conduct's recommended sanction and to impose a fully stayed one-year suspension from the practice of law. A fully stayed suspension is not commensurate with sanctions that have been imposed for similar misconduct in other cases. Because Adelstein's misconduct is more akin to—and in some ways more egregious than—the misconduct at issue in *Disciplinary Counsel v. Alexander*, 133 Ohio St.3d 232, 2012-Ohio-4575, 977 N.E.2d 633, I would adopt the recommendation of the board and suspend Adelstein from the practice of law for one year, with six months of the suspension stayed on conditions.

{¶ 32} I agree with the majority's decision that, as a condition of the stay, Adelstein must complete at least six hours of continuing legal education ("CLE") focused on client-trust-account management and recordkeeping in addition to the requirements of Gov.Bar R. X. Upon Adelstein's reinstatement, I agree with the majority opinion that she should receive a two-year period of monitored probation focused on law-office and client-trust-account management. I also agree with the condition that Adelstein commit no further misconduct. Unlike the majority, I would not order an assessment by the Ohio Lawyers Assistance Program ("OLAP"). Therefore, I concur in part and dissent in part.

{¶ 33} This case comes down to whether the sanction recommended by the board is appropriate given that relator and Adelstein had stipulated to a one-year, fully stayed suspension. The majority properly rejects two other arguments raised by Adelstein in support of her objection to the board's recommended sanction— i.e., that the board failed to properly attribute relevant physical and mental disorders and that the board improperly rejected the parties' stipulation that Adelstein acted without a dishonest or selfish motive.

**The holding in *Fowerbaugh* is not applicable to the misconduct in this case**

{¶ 34} Although the majority decides to fully stay the board's recommended one-year suspension, it begins its analysis by stating that misconduct "involving dishonesty, fraud, deceit, or misrepresentation usually requires an actual suspension from the practice of law," majority opinion at ¶ 26, citing *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190-191, 658 N.E.2d 237 (1995). The majority ultimately abandons that rule of thumb, but it bears pointing out that *Fowerbaugh* is not applicable in cases like this one in which the attorney's misconduct involves only abusing her client trust accounts and there are no misrepresentations to clients or courts.

{¶ 35} In *Fowerbaugh*, this court was more narrowly focused on misconduct "where an attorney engages in a pattern of conduct of misleading or

lying to a client [or court] concerning a legal matter entrusted to the lawyer by the client." *Id*. at 189. In *Fowerbaugh*, the attorney had engaged in an ongoing course of misconduct involving "deceit and misrepresentation designed to cover up his inaction on an entrusted legal matter." *Id*. at 190. After lying to his client, the attorney then fabricated documents to cover up the lie.

{¶ 36} At the time *Fowerbaugh* was decided, this court had a "growing concern with the increase in the discipline matters referred to [this court] by the Board of Commissioners on Grievances and Discipline [the predecessor to the Board of Professional Conduct] in which members of the bar of Ohio have deceived their clients or a court." *Id*. We explained: "A lawyer who engages in a material misrepresentation to a court or a pattern of dishonesty with a client * * * violates, at a minimum, the lawyer's oath of office that he or she will not 'knowingly * * * employ or countenance any * * * deception, falsehood, or fraud.' " *Id*., quoting former Gov.Bar R. I(8)(A).

{¶ 37} Prior to the rule this court announced in *Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237, however, this court had imposed a wide range of sanctions for misconduct involving a pattern of dishonesty toward clients and courts. *See Disciplinary Counsel v. Gwyn*, 71 Ohio St.3d 8, 640 N.E.2d 1141 (1994) (public reprimand for fabricating pleadings showing that a case had been filed and dismissed); *Toledo Bar Assn. v. Dzienny*, 72 Ohio St.3d 173, 648 N.E.2d 499 (1995) (fully stayed six-month suspension for misleading a client that a medical-malpractice action was filed before the statute of limitations expired); *Lake Cty. Bar Assn. v. Speros*, 73 Ohio St.3d 101, 652 N.E.2d 681 (1995) (six-month suspension for filing an affidavit in a court bearing a forged signature of a notary and containing a false statement blaming the failure to timely file an appellate brief on a clerical error). We stated in *Fowerbaugh* that engaging in misrepresentation to a client or a court "strikes at the very core of a lawyer's relationship with the court and with the client. Respect for our profession is diminished with every

deceitful act of a lawyer. We cannot expect citizens to trust that lawyers are honest if we have not yet sanctioned those who are not." *Id*. at 190.

{¶ 38} Accordingly, regarding the sanction that this court imposed in *Fowerbaugh*, and for sanctions in future cases involving similar misconduct, this court held:

> Therefore, recognizing that the sanctions that we have imposed heretofore against lawyers who have [engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation] are apparently not causing some lawyers to understand the importance of being honest with courts and clients, we announce a rule that will be applied to this case and future cases. When an attorney engages in a course of conduct resulting in a finding that the attorney has [engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation], the attorney will be actually suspended from the practice of law for an appropriate period of time.

*Id*.

{¶ 39} This court's holding in *Fowerbaugh* that an attorney receive an actual term of suspension when he engages in a pattern of misconduct involving dishonesty, fraud, deceit, or misrepresentation is limited to situations in which that pattern of misconduct involves a client or a court and concerns a legal matter that the client has entrusted to the lawyer. Therefore, I reject the majority opinion's broadening of this court's holding in *Fowerbaugh* to include misconduct involving client trust accounts.

{¶ 40} The misconduct at issue here is different from the misconduct in *Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237. Here, relator and Adelstein stipulated that Adelstein violated Prof.Cond.R. 8.4(c) when she engaged in

misconduct involving dishonesty, fraud, deceit, or misrepresentation by providing Square with information that allowed the company to withdraw funds from her PNC Bank client trust account when she knew that she had deposited the funds in her KeyBank client trust account. While I do not condone Adelstein's misconduct toward Square, Square was not her client. Adelstein's misconduct is not like the misconduct that this court addressed in *Fowerbaugh*. Consequently, I disagree with the majority's statement that *Fowerbaugh* requires that we begin our analysis with the premise that the presumptive sanction in this case is "an actual suspension from the practice of law," majority opinion at ¶ 26.

### The cases cited by Adelstein and relator are inapt

{¶ 41} Because *Fowerbaugh* is inapplicable and since Adelstein's misconduct involves multiple rule violations concerning her mismanagement of two client trust accounts, I now turn to the cases considered by the board for guidance in determining the proper sanction in this case. Relator and Adelstein cited four cases to support the imposition of a fully stayed one-year suspension. The panel and the board correctly discounted those cases. *Disciplinary Counsel v. Daniell*, 140 Ohio St.3d 67, 2014-Ohio-3161, 14 N.E.3d 1040, and *Disciplinary Counsel v. Eynon*, 135 Ohio St.3d 274, 2013-Ohio-953, 985 N.E.2d 1285, are generally applicable because the type of misconduct that occurred in those cases is similar to the misconduct that occurred here. But the attorneys in both those cases presented mitigation evidence that the attorneys suffered from major depression occasioned by personal tragedy. In *Daniell*, the attorney suffered from "multiple depression-related disorders resulting from his wife's death," *id*. at ¶ 13, and in *Eynon*, the attorney suffered from "major depression occasioned by a series of personal tragedies," *id*. at ¶ 11.

{¶ 42} Here, similar mitigation evidence is lacking. In Adelstein's objection to the board's findings of fact, conclusions of law, and recommendation, she argued that the board failed to properly attribute mitigating effect to her

physical and mental conditions. But I agree with the majority opinion's rejection of that argument.

{¶ 43} Similarly, *Disciplinary Counsel v. Simon*, 128 Ohio St.3d 359, 2011-Ohio-627, 944 N.E.2d 660, and *Disciplinary Counsel v. Johnston*, 121 Ohio St.3d 403, 2009-Ohio-1432, 904 N.E.2d 892, are generally applicable because of the similarity of the misconduct. However, in both *Simon* and *Johnston*, we found only one aggravating factor—that the attorneys had engaged in a pattern of misconduct. In *Simon*, we also determined that the attorney established numerous mitigating factors, including a "lack of a prior disciplinary record, the absence of a dishonest or selfish motive, and his [good] character and reputation." *Id*. at ¶ 13. And in *Johnston*, we determined that the attorney established significant mitigating factors, including that the attorney did not have a previous record of professional discipline, he had incorporated a new accounting system, he had cooperated fully in the disciplinary proceedings, and he had good character and reputation in his community.

{¶ 44} In this case, there were three aggravating circumstances. The parties stipulated to two: (1) Adelstein has two previous attorney-license suspensions for failing to register as an attorney pursuant to Gov.Bar R. VI and (2) Adelstein committed multiple offenses in the form of 19 account overdrafts from April 2014 through December 2018. *See* Gov.Bar R. V(13)(B)(1) and (4). The third aggravating factor is the presence of a selfish or dishonest motive. *See* Gov.Bar R. V(13)(B)(2). The parties stipulated that Adelstein's lack of a selfish or dishonest motive was a mitigating factor. But the board and the majority are correct to have rejected the stipulated mitigating factor. As the majority relates, there is ample evidence that Adelstein acted with a selfish motive when she placed her own financial needs above the security of the funds of her clients. And the mitigating circumstances here do not rise to the level of those in *Simon* and *Johnston*.

Therefore, the aggravating factors in Adelstein's case are not outweighed by the mitigating factors like they were in *Simon* and *Johnston*.

### *Alexander* **is the most comparable precedent**

{¶ 45} I turn now to the case that the board found to be the most aligned to Adelstein's misconduct. In *Alexander*, 133 Ohio St.3d 232, 2012-Ohio-4575, 977 N.E.2d 633, the parties stipulated that the attorney had deposited personal funds into his client trust account, issued checks on the account to pay personal and business expenses, and permitted his wife to write checks on the account. The attorney further admitted that he had not maintained a ledger of client funds for several years. And although he had attempted to intermittently reconcile his client trust account, he still committed an overdraft on the account. The attorney also engaged in improper fee splitting.

{¶ 46} The two aggravating factors in that case were (1) the attorney was late in paying his biennial attorney-registration fee, which was still outstanding at the time of the panel hearing and (2) the attorney had failed to pay an overdraft bank charge. And although the attorney did not have a disciplinary record and was cooperative during the disciplinary proceedings, this court rejected the board's recommended sanction of a fully stayed one-year suspension. Instead, this court imposed a one-year suspension, with six months stayed on conditions.

{¶ 47} Adelstein's misconduct is more egregious than the misconduct at issue in *Alexander*. As a result of an overdraft investigation for insufficient funds in 2014 and 2015, relator worked with Adelstein in remedying her noncompliance with her client-trust-account obligations. In the end, relator gave Adelstein a copy of a handbook titled *Lawyer's Trust Account*s. Relator also gave Adelstein sample forms for client ledgers, a general ledger, and an example of a client-trust-account reconciliation. Relator closed that investigation without taking any formal action, and Adelstein executed an affidavit admitting her client-trust-account misuse.

{¶ 48} After Adelstein's second round of client-trust-account overdrafts, relator filed an amended complaint, which included the affidavit that Adelstein had executed admitting her client-trust-account misconduct from 2014 and 2015. Undisputedly, the evidence reveals that Adelstein was using her client trust account for personal expenses. The majority agrees that her response to the investigation was "not always timely or complete," majority opinion at ¶ 7. And as found by the board, during Adelstein's deposition, she agreed that with respect to her KeyBank client trust account,

> she failed to maintain a general ledger * * *, failed to keep a monthly written reconciliation * * *, paid or attempted to pay personal bills and obligations from her KeyBank [client trust account], deposited personal funds and personal loans from friends and family into her KeyBank [client trust account] in excess of any amount necessary to pay monthly bank service charges * * *, commingled personal funds with client funds in her KeyBank [client trust account], and withdrew advanced retainer fees from her KeyBank [client trust account] on multiple occasions before she earned the advances fees.

{¶ 49} By October 2018, Adelstein had opened a second client trust account at PNC Bank. Relator began receiving notices from both KeyBank and PNC Bank of overdrafts. Around this time, a fee dispute with a former client occurred and the situation with Square ensued. Adelstein's misconduct regarding her client trust account spanned more years, involved more investigations, and was more egregious than the misconduct in *Alexander*, 133 Ohio St.3d 232, 2012-Ohio-4575, 977 N.E.2d 633, but the majority imposes a lesser sanction on Adelstein.

**The appropriate sanction**

{¶ 50} In *Alexander*, this court held that mishandling clients' funds is " ' "an area of the gravest concern of this court in reviewing claimed attorney misconduct." ' " *Alexander* at ¶ 12, quoting *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 19, quoting *Columbus Bar Assn. v. Thompson*, 69 Ohio St.2d 667, 669, 433 N.E.2d 602. And we also held that it is " ' "of the utmost importance that attorneys maintain their personal and office accounts separate from their clients' accounts and that the violation of that rule warrants a substantial sanction whether or not the client has been harmed." ' " *Id.*, quoting *Freeman* at ¶ 19, quoting *Erie-Huron Counties Joint Certified Grievance Commt. v. Miles*, 76 Ohio St.3d 574, 577, 669 N.E.2d 831. But today, the majority shrinks away from this holding without justification.

{¶ 51} While I recognize that "the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public," *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53, "[p]rotecting the public * * * is not strictly limited to protecting clients from a specific attorney's potential misconduct. Imposing attorney-discipline sanctions also protects the public by demonstrating to the bar and the public that this type of conduct will not be tolerated." *Disciplinary Counsel v. Schuman*, 152 Ohio St.3d 47, 2017-Ohio-8800, 92 N.E.3d 850, ¶ 17. We should send a message that Adelstein's misconduct will not be tolerated and reaffirm our holding in *Columbus Bar Assn. v. Tuttle*, 41 Ohio St.2d 183, 185, 324 N.E.2d 753 (1975), that "in order to ensure that the interests of the public are protected and to require that lawyers maintain a degree of personal and professional integrity of the highest standard," a significant sanction for commingling funds is necessary. "As the Supreme Court of California so cogently stated: 'The rule against commingling was adopted to provide against the probability in some cases, the possibility in many cases, and the danger in all

cases that such commingling wi[ll] result in the loss of clients' money.' " *Id*. at 184-185, quoting *Clark v. State Bar*, 39 Cal.2d 161, 168, 246 P.2d 1 (1952).

{¶ 52} Commingling funds was only part of Adelstein's misconduct. This case involves her complete disregard of the following Rules of Professional Conduct: Prof.Cond.R. 1.15(a) (requiring a lawyer to hold clients' property in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account setting forth the name of the account, the date, amount, and client affected by each credit and debit, and the balance in the account), 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account), 1.15(b) (prohibiting a lawyer from depositing her own funds in a client trust account except to pay or obtain a waiver of bank-service charges), 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 53} For all the foregoing reasons, I would adopt the recommendation of the board and suspend Adelstein from the practice of law for one year, with six months of the suspension stayed on conditions. As one of the conditions, in addition to the requirements of Gov.Bar R. X, I would order Adelstein to complete at least six hours of CLE focused on client-trust-account management and recordkeeping. I agree with the board that on Adelstein's reinstatement, she should have a two-year period of monitored probation focused on recordkeeping and law-office and client-trust-account management and that Adelstein must commit no further misconduct. Unlike the majority, I would not order an assessment by OLAP. Therefore, I concur in part and dissent in part.

––––––––––––––––––

Joseph M. Caligiuri, Disciplinary Counsel, for relator.

Novak, L.L.P., and William J. Novak, for respondent.

_____