[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Weber*, Slip Opinion No. 2021-Ohio-3907.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3907

DISCIPLINARY COUNSEL *v*. WEBER.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Weber*, Slip Opinion No. 2021-Ohio-3907.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to hold funds belonging to a client or third party in a client trust account and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Conditionally stayed one-year suspension.*

(No. 2021-0762—Submitted August 3, 2021—Decided November 4, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-075.

_____

**Per Curiam.**

{¶ 1} Respondent, Robert Marion Weber Jr., of Cleveland, Ohio, Attorney Registration No. 0076384, was admitted to the practice of law in Ohio in 2003.

{¶ 2} In a December 2020 complaint, relator, disciplinary counsel, alleged that Weber committed several ethical violations related to the management of his client trust account and funds belonging to at least five clients.

{¶ 3} The parties submitted comprehensive stipulations of fact and misconduct and numerous exhibits. Weber and two character witnesses also testified before a three-member hearing panel of the Board of Professional Conduct. The board issued a report finding that Weber had committed the charged misconduct and recommending that we suspend him from the practice of law for one year, fully stayed on the conditions that he commit no further misconduct, complete six hours of continuing legal education ("CLE") focused on client-trust-account and client-fund management, and pay the costs of these proceedings. No objections have been filed. Based on our review of the record and our precedent, we adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

*Count I—Mismanagement of Client Med-Pay Funds*

{¶ 4} From the time he was admitted to the bar until 2016, Weber worked for several law firms but was not involved with the management of client trust accounts. In February 2016, Weber opened a client trust account at PNC Bank. He established a solo practice in March 2016 and entered into an office-sharing agreement with Gioffre & Schroeder Co., L.P.A., that December. In July 2017, he merged his solo practice with the Gioffre firm and served as "of counsel" to that firm until December 2017.

{¶ 5} While Weber was engaged in his solo practice, he represented Anna Burgos, Amber Buckner, and Twila Hammond in personal-injury cases arising from separate automobile accidents. During the pendency of those claims, he received one or more medical-payments-coverage ("med-pay") checks payable to

each of those clients from insurers in their respective cases.[1] All told, he received $3,980 for Burgos, $1,000 for Buckner, and $10,597 for Hammond. Each of the checks was deposited into Weber's client trust account, and at least two of the checks bore what purported to be the signature of the client to whom the funds were directed. But none of the clients were aware that the checks had been issued to them, let alone signed the checks or authorized anyone else to sign for them. Weber admitted that either he or his employee (at his direction) signed the clients' names to Burgos's and Buckner's checks. The board found that although this practice was dishonest, Weber did not do it for personal gain but, rather, for what he felt to be the convenience of his clients.

{¶ 6} When Weber departed the Gioffre firm in December 2017, Burgos, Buckner, and Hammond all remained as clients of the firm. But Weber did not transfer their med-pay funds to the Gioffre firm's client trust account. On January 26, 2018, the balance in Weber's client trust account fell below the $15,577 in combined funds that he should have been holding on behalf of those three clients. And by March 15, 2018, it held just $286.91.

{¶ 7} In March or April 2018, the Gioffre firm discovered that the med-pay funds belonging to Burgos, Buckner, and Hammond had not been transferred. Weber transferred Burgos's and Buckner's funds to the Gioffre firm on April 5, and he transferred Hammond's funds on April 24.

{¶ 8} At his disciplinary hearing, Weber testified that he had deposited his clients' med-pay checks into his client trust account to pay the clients' medical

---

1. Med-pay is an optional automobile-insurance coverage that pays the insured or the insured's passengers up to a specified amount for medical expenses incurred following an accident, regardless of who was at fault in the accident. Ohio Department of Insurance, *Guide to Automobile Insurance* (Feb. 12, 2019), https://insurance.ohio.gov/wps/wcm/connect/gov/ea3f5cf0-181b-47ed-bdbd-a060b6613a4d/CompleteAutoGuide_web.pdf?MOD=AJPERES&CONVERT_TO=url&CACHEID=ROOTWORKSPACE.Z18_M1HGGIK0N0JO00QO9DDDDM3000-ea3f5cf0-181b-47ed-bdbd-a060b6613a4d-mUYZ9Mu (accessed Oct. 18, 2021) [https://perma.cc/L5B3-4TAU].

bills. Although Weber believed that those checks were subject to his contingent-fee agreements, he did not collect any fees from those funds.

{¶ 9} The board found that Weber's conduct in these matters violated Prof.Cond.R. 1.15(d) (requiring a lawyer to promptly notify a client that the lawyer has received funds in which the client has a lawful interest and promptly deliver to the client any funds that the client is entitled to receive) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt these findings of misconduct.

*Count II—Mismanagement of Client Trust Account*

{¶ 10} In March 2016—one month after opening his client trust account—Weber deposited $35,000 of his personal funds into the account. At his disciplinary hearing, he testified that he did this to build up a buffer so that instead of waiting for insurance checks to clear, he could promptly issue checks to his clients when their cases settled. In 2017 and 2018, Weber deposited settlement checks, earned fees, and an $8,000 check from a joint account that he shared with his wife into his client trust account. On at least one occasion, he failed to withdraw his earned fee after disbursing settlement proceeds to his client. He also failed to conduct monthly reconciliations of his client trust account from March 2016 until at least August 8, 2018.

{¶ 11} In addition, Weber twice delayed the distribution of settlement proceeds to his clients. First, he deposited a settlement check for client Richard Keuhn into his client trust account sometime before June 10, 2017. Weber then issued checks totaling $2,006.50 to himself for his fee and reimbursement of advanced costs, and he paid Keuhn's $2,750 medical bill, leaving a balance of $2,241.18 due to the client. However, Weber did not disburse those funds to Keuhn until January 9, 2018. When Keuhn attempted to negotiate the check on April 12, 2018, Weber's bank returned it because Weber's client-trust-account balance was just $401.36. On August 8, 2018, after receiving relator's letter of

inquiry regarding the overdraft of his client trust account, Weber deposited $2,241.18 of his personal funds into that account to cover the amount he owed to Keuhn. And on November 30, 2018, he issued a new check to Keuhn.

{¶ 12} Similarly, on March 9, 2017, Weber deposited into his client trust account a $45,000 settlement check from State Farm Insurance payable to himself and his client Asa Knowles. The next day, he issued a $14,500 check for his fee, and on March 15, he issued another check for $8,900 for Knowles's medical treatment. Although Knowles was entitled to receive the remaining $21,600 at that time, Weber waited until January 26, 2018, to issue him a $20,100 check. In response to relator's investigation, Weber issued a check for the remaining $1,500 to Knowles on May 12, 2020—more than three years after he received the settlement proceeds from the insurer in Knowles's case and more than two years after his first disbursement to Knowles.

{¶ 13} Moreover, the record demonstrates that when Weber's client-trust-account balance dropped to $286.91 on March 15, 2018, the account should have held $2,241.18 for Keuhn, $1,500 for Knowles, and $2140.50 for his client Samuel Wilson—in addition to the $15,577 that it should have held for the clients as discussed above in Count One.

{¶ 14} The board found that Weber's conduct with respect to this count violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separate from his own property), 1.15(a)(5) (requiring a lawyer to perform and retain monthly reconciliations of the funds held in the lawyer's client trust account), 1.15(b) (permitting a lawyer to deposit his or her own funds in a client trust account for the sole purpose of paying or obtaining a waiver of bank service charges), and 1.15(d). We adopt these findings of fact and misconduct.

**Sanction**

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} The board found that just two aggravating factors are present—Weber engaged in a pattern of misconduct and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(3) and (4). As for mitigating factors, the board found that Weber has a clean disciplinary record, made restitution to all of the clients affected by his misconduct, and cooperated in the disciplinary process. *See* Gov.Bar R. V(13)(C)(1), (3), and (4). The board also found that he presented evidence of his good character or reputation through several letters and the testimony of two witnesses—including an attorney who had been Weber's supervisor for eight years. *See* Gov.Bar R. V(13)(C)(5). Although the evidence established that on several occasions the balance in Weber's client trust account fell below the amount that he should have held on behalf of his clients, the board found no evidence that Weber had misappropriated the funds for his own benefit. Instead, the board determined that he was simply not experienced in managing client funds in a client trust account when he started his solo practice. At the time of his disciplinary hearing, Weber was serving as the deputy county administrator for Lorain County and was no longer actively representing clients.

{¶ 17} The parties jointly recommended that Weber be suspended from the practice of law for one year, stayed on the condition that he commit no further misconduct. The board found that this sanction is consistent with the sanctions we imposed in *Disciplinary Counsel v. Adelstein*, 160 Ohio St.3d 511, 2020-Ohio-3000, 159 N.E.3d 1126, and *Disciplinary Counsel v. Gorby*, 142 Ohio St.3d 35, 2015-Ohio-476, 27 N.E.3d 510.

{¶ 18} Like Weber, Adelstein mismanaged her client trust account over a period of years. She admitted that she had deposited personal funds into her client trust account, failed to deposit unearned fees from two clients, failed to reconcile the account on a monthly basis, and authorized or initiated 19 transactions that resulted in overdrafts or insufficient funds. She also stipulated that she had engaged in dishonest conduct by providing information to a payment-processing company that allowed that company to attempt to reverse a client's payment through her client trust account—though none of the client's funds were held in that account. Although we acknowledged that some of Adelstein's actions were taken with a dishonest or selfish motive, we found that the bulk of her violations—like Weber's—were the result of her failure to fully understand her obligations with respect to the management of her client trust account. We also recognized that Adelstein had made full and free disclosure to the board and generally cooperated in the disciplinary process, caused no harm to her clients, and submitted letters from two clients who attested to her competence and capability as an attorney. We suspended Adelstein from the practice of law for one year, fully stayed on conditions that, among other things, required her to complete six hours of CLE focused on client-trust-account management and record keeping.

{¶ 19} In *Gorby*, the attorney agreed to represent her sister and brother-in-law in a pending foreclosure action. Gorby deposited $6,400 of their money into her business checking account, which was intended to be held in trust until there was enough money to stop the foreclosure. However, Gorby began writing checks from that account to cover her personal and business expenses. The account balance soon dropped below the amount that she was supposed to be holding for her sister and brother-in-law and remained inadequate by varying amounts for approximately one year. Then, days before depositing $5,500 in personal funds into her business account, Gorby responded to relator's letter of

inquiry and stated that she was "presently holding $5,500 on their behalf." *Gorby* at ¶ 9. Although Gorby acted with a dishonest or selfish motive when she misappropriated the funds and she engaged in a pattern of misconduct, Gorby also made a timely, good-faith effort to make restitution and made a full and free disclosure to the board and exhibited a cooperative attitude toward the proceedings. Moreover, her sister and brother-in-law suffered no harm as a result of her misconduct. We suspended Gorby from the practice of law for one year but stayed the entire suspension on the conditions that she engage in no further misconduct and serve one year of monitored probation focused on law-office and client-trust-account management.

{¶ 20} After independently reviewing the record and our precedent, we agree that a one-year suspension, stayed in its entirety on the conditions recommended by the board, is the appropriate sanction for Weber's misconduct.

**Conclusion**

{¶ 21} Accordingly, Robert Marion Weber Jr. is suspended from the practice of law in Ohio for one year, fully stayed on the conditions that he completes six hours of CLE focused on client-trust-account and client-fund management, commits no further misconduct, and pays the costs of these proceedings. It is further ordered that if Weber fails to comply with the conditions of the stay, the stay will be lifted and Weber will serve the entire one-year suspension. Costs are taxed to Weber.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

––––––––––––––––

Joseph M. Caligiuri, Disciplinary Counsel, and Audrey E. Varwig, Assistant Disciplinary Counsel, for relator.

Charles J. Kettlewell, for respondent.

January Term, 2021

———————————